O'Connor vs. City of Fond du Lac.

O'Connor, Respondent, vs. City of Fond du Lac, Appellant.

*February 2 — February 26, 1901.*

(1–3) *Action: Conditions precedent to right to sue and to remedy*: *Limitations: Waiver.*  (4, 5) *Statutes: When take effect: "From and after" publication.*  (6–11) *Municipal officers: Election and term of office: Power of legislature: Constitutional law.*

1. Failure to perform a condition precedent to the existence of a right, as that prescribed by sec. 1339, Stats. 1898, prevents the acquirement thereof, and may be insisted upon at any stage of judicial proceedings in respect thereto.

2. Failure to perform a condition of the use of a judicial remedy to enforce a right having no dependence thereon for its existence — such as the condition requisite to the continued existence of a claim against a railway for the negligent killing of stock by a railway train, or damage for the negligent setting of fires by a locomotive engine, under sec. 1816b, Stats. 1898 — is waived if objection is not taken by answer or demurrer, the statute, to all intents and purposes, being a statute of limitations and governed as such.

3. Failure to perform a statutory condition precedent to the commencement of an action — as one that no action shall be commenced to enforce a city liability until notice shall have been given of the existence thereof and the common council of the city have had an opportunity to pass upon the same — has the same effect as failure to comply with a statute of limitations. It is in the nature of such a statute, though failure to comply with it may only abate the action if objection be taken by answer or demurrer. If not so taken the objection is waived.

109   253
p109  270
p109  271
109   587

109        253
113        ²296

109        253
s53 LRA  831
53 LRA 837n
56 LRA 893n
57 LRA 230n
57 LRA 244n
57 LRA 775n

O'Connor vs. City of Fond du Lac.

4. The words "from and after," used in a statute in regard to time, are ordinarily held to signify exclusion of the day from which reckoning is to be made; and such meaning should prevail in the absence of some clear legislative intent to the contrary.

5. Publication of an act of the legislature prior to its taking effect being for the purpose of enabling persons affected to shape their course accordingly, a provision therefor in the form, the act shall take effect from and after publication thereof, is consistent with such words being used exclusively and inconsistent with their being otherwise used.

6. Ch. 247, Laws of 1897, which attempted to extend the term of office of the chief of police in the defendant city, among other such corporations, beyond the term for which he was specifically elected, if valid, entitled him to hold such place and receive the emoluments thereof till succeeded by a person appointed to his place under such act.

7. Sec. 9, art. XIII, of the constitution, prohibits the legislature from interfering in any way with the question of what person shall hold any office in any city in this state of a character known at the time of the adoption of the constitution, whether then known by the same name as subsequently or not, and limits all power in that regard to the electors of the particular locality interested, to be exercised directly or by some municipal agency selected directly or indirectly by them.

8. City governments, at the time of the adoption of the constitution, commonly included a police department, and all offices pertaining thereto, whether now known by the names they bore prior to such adoption or not, must be considered as in the class which the constitution expressly declares must be filled by election by the electors of the particular localities interested, or by appointment by such authority of such localities as the legislature shall designate.

9. The idea expressed in the constitution is not that all officers of towns, cities, and villages whose election is not provided for in the constitution may be elected or appointed in such manner as the legislature may deem best, but that all officers corresponding to town, city, and village officers as regards official duty, that were known at the time of the adoption of the constitution, shall be elected or appointed by some authority of the particular locality interested, designated by the legislature.

10. An act of the legislature appointing members of a police force in a city is an unconstitutional interference with local affairs.

11. An act of the legislature, so far as it expressly, or by its effect, extends the term of office of a member of the police force of a city

O'Connor vs. City of Fond du Lac.

beyond that for which he was specifically elected or appointed by legitimate municipal authority, so as to keep such officer in place for any period of time regardless of such authority, is unconstitutional and void.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Fond du Lac county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action to recover for services rendered defendant as chief of police. Plaintiff was elected such chief May 1, 1896, for the year ending May 1, 1897, and till his successor should be legally elected and qualified, the salary of the office being fixed at $50 per month, payable monthly. He qualified for the office and performed its duties till excluded therefrom as hereafter mentioned. April 17, 1897, an act of the legislature, known as chapter 247 of the General Laws of 1897, was duly published. It provided, among other things, as follows:

In cities of the third class, to which defendant belonged, a board of police and fire commissioners, consisting of four citizens, shall be appointed, in a manner indicated, before the first Monday of May, 1897, one to hold his office for the term of one year, one for two years, one for three years, and one for four years, from the said first Monday of May following, and until his successor should be appointed and qualified. No person shall be appointed to any position on the police force or in the fire department in any such city except with the approval of said board, after said act goes into effect. Said board shall, as soon as practicable, prepare and adopt rules and regulations governing the selection and appointment of persons to be employed on the police force and in the fire department of any such city. Whenever the term of office of any chief of police or chief engineer of a fire department heretofore appointed or elected in any such city shall expire after the act goes into effect, and before the board of police and fire commissioners shall have adopted

O'Connor vs. City of Fond du Lac.

the necessary rules and regulations with reference to the appointment of police officers, or when any such officer is holding over at the time the act goes into effect, such officer shall hold his office until his successor shall have been duly appointed in accordance with the rules and regulations of the board. All other members of the police force in any such city, at the time the act goes into effect, shall hold their respective positions for six months from the date when the rules and regulations adopted by the board shall go into effect, and thereafter under certain specified conditions.

The act further provided for the suspension of police officers by the board of police commissioners under certain circumstances.

In defendant city, prior to May 1, 1897, a board of police commissioners was duly appointed, and the members thereof duly qualified, and on the first Monday of May, 1897, entered upon the duties of their offices. About May 24th, thereafter, said board, in compliance with said act, promulgated its rules for the appointment of members of the police department of the city and other employees and officers affected by said act. In April, 1897, the common council of the city appointed Thomas McGrath chief of police thereof for the year commencing May 1, 1897. He took the oath of office of such chief April 17, 1897, and filed such oath and his official bond with the clerk of said city. Such bond was not presented to or approved by the council of the city until April 22, 1897. On May 1, 1897, defendant caused plaintiff to be excluded from the office of chief of police upon the pretense that his term of office expired on that day and that said McGrath was entitled to enter upon the duties thereof. From the time of such exclusion until November 1st thereafter plaintiff held himself in readiness to perform the duties of chief of police of said city, and offered to perform such duties, but was not allowed to do so. At the end of each month during said period, plaintiff in due form of law made

O'Connor vs. City of Fond du Lac.

his claim against the city for $50 as salary of chief of police of said city, all of which claims were rejected by the common council thereof. Plaintiff was never removed from his office by the said board of police commissioners, or displaced by any other person under its rules and regulations.

The pleadings raised merely the issue of whether the city of *Fond du Lac* was indebted to plaintiff for salary of chief of police for the six months subsequent to May 1, 1897. There was no dispute but that the facts were as above stated. The court found, as a matter of law, that plaintiff was chief of police of the defendant when the act of 1897 went into effect, and was entitled to hold said office till November 1st thereafter, since he was not removed or displaced by the board of police and fire commissioners; that his exclusion from the office was wrongful, and that he was entitled to recover the salary of the office claimed. Judgment was rendered accordingly.

For the appellant there was a brief by *O. H. Ecke*, city attorney, and *Maurice McKenna* and *Edward W. Phelps*, of counsel, and oral argument by *Mr. McKenna*. To the point that ch. 247, Laws of 1897, is invalid so far as it extends the term of office of the chief of police, they cited sec. 9, art. XIII, Const.; *Cole v. Black River Falls,* 57 Wis. 110; *State ex rel. Hamilton v. Krez,* 88 Wis. 135; *People ex rel. Lord v. Crooks,* 53 N. Y. 648; *People ex rel. Williamson v. McKinney,* 52 N. Y. 374, 383; *People ex rel. Fowler v. Bull,* 46 N. Y. 57, 61–63; *State ex rel. Perry v. Arrington,* 18 Nev. 421, 424; *People ex rel. Brown v. Woodruff,* 32 N. Y. 355; *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 614.

*Edward S. Bragg*, of counsel, for the respondent.

MARSHALL, J.     Sec. 5 of subch. XVIII of the city charter of the appellant provides as follows:

"No action shall lie or be maintained against the city of *Fond du Lac* on contract until the claimant shall have presented to the common council, a statement of the claim and

O'Connor vs. City of Fond du Lac.

the amount thereof, and the circumstances out of which it arose, duly verified on the oath of the claimant, and the council shall have allowed a regular meeting to pass without an adjustment with the claimant of such claim or demand." Laws of 1883, ch. 152.

The complaint does not show that such charter condition to the maintenance of this action exists. No objection was taken by appellant on that ground, either by answer or demurrer. The record does not show that evidence of the existence of such condition was produced. The point is now made that such situation is fatal to the judgment, the following cases being cited in support thereof: *Stocks v. Sheboygan*, 42 Wis. 315; *Hill v. Fond du Lac*, 56 Wis. 244; *Kelley v. Madison*, 43 Wis. 638; *Weed & G. Mfg. Co. v. Whitcomb*, 101 Wis. 226. *Stocks v. Sheboygan* is unlike this case, because there the question of the existence of the condition was raised by demurrer. In *Hill v. Fond du Lac*, the question here raised was not involved, because the action sounded in tort and was held not to be included in the charter provision. *Kelley v. Madison* is unlike this case for two reasons: first, because the question was raised by a demurrer to the complaint; second, because it was held that the action was one sounding in tort and not affected by the charter provision against the maintenance of an action on a claim or demand till the same should be first filed as therein required. In *Weed & G. Mfg. Co. v. Whitcomb*, a statutory condition to the enforcement of a common-law right was treated as a condition of the right itself, confusing a limitation statute acting on the remedy only, which may be and is waived by a failure to insist upon it by answer or demurrer (sec. 2654, Stats. 1898), with a statutory condition to the existence of a right, as, for instance, one necessary to a cause of action against a municipality for compensation for an injury caused by a defective highway under sec. 1339. The same error was committed in *Ryan v. C. & N. W. R. Co.* 101 Wis. 506. It was corrected, as far as pos-

O'Connor vs. City of Fond du Lac.

sible, in *Relyea v. Tomahawk P. & P. Co.* 102 Wis. 301, which was affirmed in *Meisenheimer v. Kellogg*, 106 Wis. 30, and *Malloy v. C. & N. W. R. Co.*, *ante*, p. 29.

So we see that none of the cases cited by counsel supports their proposition, while *Relyea v. Tomahawk P. & P. Co.*, and *Meisenheimer v. Kellogg*, are to the effect that charter provisions of the kind under consideration are in the nature of statutes of limitations and governed by rules applicable thereto. If not complied with, the objection must be taken by answer or demurrer or be considered waived. Care must be taken not to confuse such statutes with those imposing a condition of the existence of a right. Noncompliance with the latter condition goes to the cause of action, not to the remedy for the redress of the wrong. The distinction between the two classes of rights is so clear that no one need go astray. In one case the right depends on the statute; in the other the right is independent of the statute, but its enforcement is regulated and limited by law. In the former, failure to comply with the statute prevents the creation of the right, hence it is not waived by failure to raise the point by demurrer or answer; while in the latter the condition relates to the remedy only, and is waived unless insisted upon by answer or demurrer. That was the rule at common law, and the statute (sec. 2654, Stats. 1898) expressly preserves it. Failure to comply with a statutory condition of the use of a remedy does not go either to the jurisdiction of the court or to the cause of action.

The foregoing is in harmony with *Sheel v. Appleton*, 49 Wis. 125, and *Benton v. Milwaukee*, 50 Wis. 368. In *Benware v. Pine Valley*, 53 Wis. 527, the court said that failure to comply with the condition of sec. 1339, as regards a claim for damages caused by a defective highway, and to allege such compliance in the complaint, was fatal to plaintiff's cause of action, though the point be not raised by answer or demurrer; and that anything said to the contrary in the

O'Connor vs. City of Fond du Lac.

other two cases above referred to is wrong. The idea seems to have been in mind that the cases were somewhat in conflict. In that the court fell into the error of not observing clearly the distinction between compliance with a statute which is the foundation of a right, and compliance with one which merely regulates or limits the enforcement thereof. The *Benware Case* was decided rightly, because service of the notice of the injury under sec. 1339, R. S. 1878, was a condition of the right there in question. The other two cases were also decided rightly, because the statutory condition involved operated only upon the remedy. Those cases were affirmed in *Bradley v. Eau Claire*, 56 Wis. 168; *Collette v. Weed*, 68 Wis. 428; *Lombard v. McMillan*, 95 Wis. 627; and *Bigelow v. Washburn*, 98 Wis. 553.

The case, on the merits, turns on the effect of ch. 247, Laws of 1897, on respondent's right to hold the office of chief of police of the appellant, from the 1st day of May, 1897, till the 1st day of November thereafter. On that, these questions are presented for solution: When did the act take effect? Was McGrath the legal successor of respondent by the terms of the act and entitled to the office in dispute from the 1st day of May, 1897, at least till displaced by an appointee of the board of police and fire commissioners? If not, and the law by its terms took from appellant the power to elect a successor of respondent, or extended his term of office beyond the 1st day of May, 1897, was it in that regard constitutional? We will consider each of such propositions, though it pretty clearly appears that the first is immaterial.

1. Appellant contends that the act in question became a law on the 18th day of April, it having been regularly published on the previous day; that the day of publication should be excluded in determining when the law became effective. That turns on the meaning of the words " from and after " in the last section, which says: " This act shall

take effect and be in force from and after its passage and publication." The word "from," and that in connection with the word "after," is sometimes used inclusively and sometimes exclusively. They have no certain literal or legal meaning that can be accepted as a guide under all circumstances. They are open to construction in many cases, so that courts sometimes hold that they are used exclusively, and at other times inclusively, as seems best calculated to effect the legislative intent; though it has come to be quite generally accepted as the rule that the meaning of the words in connection, "from and after," excludes the day from which the reckoning is to be made, and in order to avoid the application of it as a rule of construction there must be something in the act, or the result of a literal application of the words to the subject treated by it, to indicate a contrary intent. Sedgwick, Stat. & Const. Law, 356; Smith, Stat. & Const. Law, § 616. That has been recognized as the law by this court. *Stewart v. McSweeney*, 14 Wis. 468; *McGinley v. Laycock*, 94 Wis. 205. There is no reason why "from and after," in the act in question, should not be considered as having been used in what we say has come to be regarded as their literal sense. On the contrary the purpose of the publication strongly supports that view. That purpose was to give notice, to persons affected by the law, of its existence, before it went into effect. Clearly, such purpose could not be accomplished without a completed publication. That would exclude the day on which the act was done, as fractions of a day are not ordinarily counted. The contrary view would lead to the absurd result that an act designed to give notice of the existence of a law in advance of its going into effect might occur subsequent thereto. It cannot be held that any such absurdity was intended, by mere judicial construction. The other view accords with the literal sense of the words. It gives significance to the use of the word "after" in connection with the word

" from," and makes the meaning sensible in the light of the purpose of the publication. That idea has been adopted elsewhere. *Duncan v. Cobb*, 32 Minn. 460; *Parkinson v. Brandenburg*, 35 Minn. 294.

2. There is no controversy but that McGrath was regularly elected as respondent's successor by the common council of appellant before the act in question went into effect. The learned trial court does not appear to have regarded the date of such election as of sufficient significance to require a mention thereof in the findings of fact, but he gave prominence to the date of the circumstance of qualification by the approval of the official bond. The latter circumstance does not appear to have been made material by the law of 1897, in any view of it. If the act was valid it took from the common council power to elect a chief of police after the 17th day of April, 1897, not before. Election to an office is one thing; a condition precedent to the person elected taking possession thereof is quite another thing. It was with the first circumstance that the law dealt, and that is the significant one on this branch of the case. Those provisions of the law affecting McGrath's right to the office are in the main as follows:

" After this act goes into effect no person shall be appointed to any position, either on the police force or in the fire department, . . . except with the approval of the board."

" Whenever the term of office of any chief of police . . . or other officer performing the duties of chief of police . . . by whatever name designated, heretofore appointed or elected, . . . shall expire after this act goes into effect and before the board of police and fire commissioners shall have adopted the necessary rules and regulations with reference to the appointment of police officers and members of the fire department, . . . or when any such officer is holding over at the time this act goes into effect," he shall hold his office " until his successor shall have been duly appointed by the board."

"All other members of the force in either department named, . . . at the time this act goes into effect, shall hold their respective positions for six months from the date when the rules and regulations adopted by the board shall go into effect, and thereafter," under certain conditions mentioned.

It seems quite clear that the legislative idea was that the persons elected to official positions affected by the act, before it took effect, whose terms of office should expire there after and before the board of police and fire commissioners should be competent to fill their places, should remain in such places till that time, regardless of the specific terms for which such officers were elected or appointed. It says distinctly, as to the particular office in question, if the term of an officer elected or appointed before the taking effect of the act shall expire thereafter, he shall nevertheless continue in office till the place shall be filled by the board according to rules and regulations to be adopted by it as soon as possible after the first Monday of May, 1897. That contemplated, as to such office, these circumstances in combination: a person elected or appointed prior to the taking effect of the act, the expiration of the term for which he was elected or appointed prior to the creation of the board of police and fire commissioners, and its qualification to act pursuant to the rules and regulations adopted for its government. We should say in passing that the making of such rules was not contemplated till after the 1st day of May, 1897, and that the terms of office of the members of the board did not commence till that time. The respondent satisfies the conditions mentioned, and McGrath does not. The latter was elected before the act in question went into effect, but the term for which he was elected did not expire prior to the time when the board of police and fire commissioners were required to be in readiness to fill the place by appointment under its rules and regulations. It follows that the second proposition advanced by appellant

O'Connor vs. City of Fond du Lac.

must be resolved in favor of respondent.  By the wording of the law his term of office was extended beyond that for which he was elected, and since his place was not sooner filled by the board of police and fire commissioners, such extension included the six months from May 1 to November 1, 1897.  He was therefore entitled to recover of appellant the salary for which this action was brought, if the legislative extension of his term of office was valid.

3. The validity of the legislation extending the term of office of respondent, regardless of the will of the appellant, must be tested by sec. 9, art. XIII, of the constitution, which provides that:

" All city, town and village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some subdivision thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose.  All other officers whose election or appointment is not provided for by this constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people or appointed, as the legislature may direct."

Counsel for both sides seem to appreciate fully that such constitutional provision was adopted here from New York, it having existed there as early as 1846; that it was construed by the highest courts of that state at an early day, and that such construction has been approved here so far as the subject has been presented to this court; but they draw very different conclusions from the decisions.

It will be observed that the language of the constitution deals with several classes of officers: first, city, town and village officers whose election or appointment is provided for by the constitution; second, such officers not provided for by the constitution; third, all other officers whose election or appointment is not provided for by the constitution; fourth, all officers whose offices were created by law subsequent to the adoption of the constitution.  It was absolutely

taken out of the power of the legislature to appoint any officer of the second class mentioned, such power being expressly conferred upon the people of the municipality served by such officers. The purpose of that is plain and has often been declared by the courts. It was to render secure the important right of local self-government,— to give to the people of each locality the power to say and determine as directly as practicable who shall perform the governmental functions that concern such localities only as organized subdivisions of the state. That right, under our system of government, has from the start been regarded as the very foundation thereof, and absolutely necessary to its success. The New York court, in a very recent case, expressed the idea indicated, thus:

"As to offices known and in existence at the time of the adoption of the constitution, this provision is absolute in its prohibition of an appointment by the central government or its authority, or by any body other than the local electors or some local authority designated by law. This right of self-government lies at the very foundation of our institutions, and cannot be disturbed or interfered with, even in respect to the smallest of the divisions into which the state is divided for governmental purposes, without weakening the entire foundation; and hence it is a right not only to be carefully guarded by every department of the government, but every infraction or invasion of it is to be promptly met and condemned by the courts when such acts become the subject of judicial investigation." *Rathbone v. Wirth*, 150 N. Y. 459, 469.

That language is none too strong. It voices correctly the views of the framers of the constitution as they were unmistakably written into it. Therefore, if it appear that the office in question in this case was one of the class the legislature was rendered powerless to fill, and that the law, so called, extending appellant's term was in effect an appointment thereto, the duty of the court to condemn the usurpation of power is plain.

O'Connor vs. City of Fond du Lac.

We shall not take time to analyze at length the constitutional provision under consideration, because the questions in regard to it are too well settled to require or justify such labor. The class of officers which the legislature is prohibited from directly interfering with, includes, as indicated, all city, town, and village officers known and in existence at the time of the adoption of the constitution, whether known by the same names as they now bear or not. All of the New York authorities on the subject so hold. *People ex rel. Wood v. Draper*, 15 N. Y. 532; *People ex rel. Loew v. Batchelor*, 22 N. Y. 128; *People ex rel. Brown v. Woodruff*, 32 N. Y. 355; *People ex rel. Fowler v. Bull*, 46 N. Y. 57; *People ex rel. Bolton v. Albertson*, 55 N. Y. 50; *People ex rel. Williamson v. McKinney*, 52 N. Y. 374; *People ex rel. Le Roy v. Foley*, 148 N. Y. 677; *Rathbone v. Wirth, supra.* This court has likewise passed upon the same question. *State ex rel. Hamilton v. Krez*, 88 Wis. 135.

The learned counsel for respondent argues that an office is a mere legislative creation, belongs to the fourth class mentioned in sec. 9, and may be filled by legislative appointment where there is no express constitutional provision for otherwise filling it. That overlooks the fact that power is not left with the legislature in its discretion to appoint or elect all officers whose election or appointment is not provided for in the constitution, and that it has never been so understood from the earliest treatment of the subject by Mr. Justice DENIO in *People ex rel. Wood v. Draper, supra.* From the fact that provision is not made in the constitution for the appointment of an officer to serve a town, city, or village in the performance of some duty as regards local government therein, it by no means follows, as suggested, that such appointment or election can be made directly by the legislature. The language of the constitution clearly indicates the contrary. Town, city, and village officers whose election or appointment is provided for in the consti-

O'Connor vs. City of Fond du Lac.

tution are mentioned as a class only to exclude them from officers generally that have to do with the government of such local governmental subdivisions of the state. After making such exclusion, the balance of such local officers is put in the class to be selected only by the electors of the particular localities affected, by the direct vote of such electors or by some local agency designated by the legislature for that purpose. The idea, as we understand the counsel, that all officers whose election or appointment is not provided for in the constitution may be elected or appointed by the legislature, is as novel as it is contrary to the plain meaning of the constitution. If adopted, one of the fundamental ideas of the framers of that instrument would certainly be lost sight of. They intended that all local officers, according to the then known schemes for local self-government, should be chosen by the people of the localities affected. That such was the idea intended to be embodied in the constitution is voiced by every court that has spoken on the subject.

'The presence of the provision in the constitution in regard to the election or appointment of local officers by the people, evidences the importance which the people, when the constitution was framed, attached to the preservation of their right to the management of their local affairs. It means the right to choose their local officers in all its reality, or it means nothing. If it does not mean that the people have reserved the right of administering local offices by officers of their own choosing, whether it be done directly through an election or indirectly through the method of an appointment by some of their local authorities, I am at a loss to understand its significance or in what consists its peculiar value.' Justice GRAY in *Rathbone v. Wirth*, 150 N. Y. 459.

'The obvious purpose of that provision of the constitution was to secure to the people of the cities, towns and villages of the state, the right to have their local offices administered by officers selected by themselves.' ANDREWS, J., in *People ex rel. Williamson v. McKinney*, 52 N. Y. 374.

"Faithfully observed, and effect given to such provision in its spirit as well as in its letter, it effectually secures to each of the governmental divisions of the state the right of choosing or appointing its own local officers, without let or hindrance from the state government, and none can be deprived of the rights and franchises thus granted to all." ALLEN, J., in *People ex rel. Bolton v. Albertson,* 55 N. Y. 50.

The offices of policeman and chief of police or city marshal (the particular name of the office being immaterial) in cities and villages, were as well known at the time of the adoption of the constitution as any other. Such offices were understood to be essential to good order in large communities, and they were universally provided for in all city and village organizations. So there can be no question but that the power of electing or appointing such officers was prohibited to the legislature by the provision of the constitution under consideration.

But it is said that the mere continuance in office by legislative enactment, of a person whose installation in the position was by a constitutional agency is not a legislative appointment, and that the term of office of respondent, regardless of the law of 1897, having commenced by a municipal appointment and being for one year and until his successor should be elected and qualified, strictly speaking and in a constitutional sense, it was not extended by such law. That proposition was advanced in *People ex rel. Loew v. Batchelor,* 22 N. Y. 128, and was there adopted, but the case was soon overruled and has not been considered authority for nearly half a century. The rule in New York is the same as that declared in *State ex rel. Hamilton v. Krez,* 88 Wis. 135, that the continuance of a person in office by legislative interference, beyond the specific term for which he was elected or appointed, is equivalent to a new appointment to the office, and void if the office be one that the legislature cannot fill by direct appointment or election. *People ex rel. Fowler v. Bull,* 46 N. Y. 57; *People ex rel. William-*

*son v. McKinney,* 52 N. Y. 374; *People ex rel. Le Roy v. Foley,* 148 N. Y. 677. The right to fill an office by a new selection at the expiration of each term thereof is secured to the people of the locality specially concerned, the same as the power to fill the place in the first instance, and any attempt to interfere with that right, working a continuance of an incumbent in office, under the general rule that his incumbency shall continue till a successor is elected and qualified, is held to be as much a legislative appointment and usurpation of power as an express appointment to the place. In *People ex rel. Le Roy v. Foley, supra,* it was said that the power to appoint in such cases cannot be directly exercised by the legislature, nor indirectly by extending the term of an officer after his election. It is clear, it would seem, that if an officer be kept in office by legislative interference for any period after he could, but for such interference, be displaced by the power that originally selected him for the place, it is to all intents and purposes one of the very legislative intermeddlings with local affairs that the constitution was designed to prevent.

It follows that it is the duty of the court to declare the act in question, so far as the effect thereof would otherwise be to extend the term of office of any officer mentioned in it, either expressly or by taking from cities the power to elect and install his successor, an excess of legislative authority and void.

Before leaving the subject we should refer to *State v. Douglas,* 26 Wis. 428, which the learned counsel for respondent contends supports the power of the legislature to do the thing called in question in this case. That case affirms the power of the legislature to shorten the term of an office not fixed by the constitution. That is quite a different question from the one considered here. It is one thing to elect or appoint a person to an office, or to extend the term of one already elected or appointed; that is what sec. 9, art.

XIII, in the cases covered by it, prohibits. It is quite another thing to shorten a term of office, leaving the power of the people of the locality affected unimpaired to fill the place anew, if it is to be filled at all. There is no constitutional restriction upon legislative power as to that, where the term of office is not fixed by the constitution.

Some other questions are suggested by appellant's counsel for consideration, but they do not appear to possess sufficient merit to call for special notice. The attempted extension of respondent's term of office was invalid. McGrath was entitled to take possession of the office at the time he did. The term of office of the respondent then expired.

*By the Court.*— The judgment is reversed, and the cause remanded with directions to render judgment in favor of the defendant for costs.