Summers, C. J.
In December, 1909, death caused a vacancy in the office of chief of police of the city of Marietta. On December 4 of that year the mayor filled the vacancy b)r the appointment of the relator who duly qualified and entered upon the duties of the office. On January 1, 1910, a new mayor entered upon the duties of that office, and as such mayor issued a written notice to the relator that his services as chief of police terminated on that day, and that he had appointed James A. Roney,’the defendant, as chief of police. This notice was not delivered to the relator until the morning' of January 2. On January 3 the defendant qualified as chief of police and since then has been acting as such. The relator refused to surrender the office and brought suit in quo *378 warranto in the circuit court to oust the defendant. The defendant answered that the relator was not eligible to the office at the time of his appointment, because he was not then a member of the police force or on the classified list of that department of the city government; that the relator at the time of his appointment, and for a year. prior thereto, was not a resident of the city; that on the date. of the relator’s appointment a rule, adopted by the board of public safety, was in force, whereby, when an. appointment was made by the mayor to fill a \mcancy in the police department, the .appointment was on probation for a period of thirty days from- and after the date of such appointment, and that the mayor of the city, by and with the consent of the director of safety, had discharged and removed from office the relator within thirty days from his said appointment. The general demurrer to the answer was overruled and the relator then filed a reply in which he averred that in 1903 he had taken the required examination and had been a member of the classified service of the police department, and had served on the police force until he had in the same year resigned to go into business. A general demurrer to the reply was sustained, and, the relator not desiring to plead further, the petition was dismissed.
The municipal code of 1902 provided for the government of municipalities by a mayor and an elected board of public service and an appointed board . of public safety. The board of public service had charge of the streets, water-works, workhouse and charitable institutions, and the *379 board of public safety, together with the mayor, had charge of the police and fire departments, and the appointees and employes in the police and in the fire departments were under civil service rules administered by the board of public safety. In 1908 the so-called Paine law was passed (99 O. L'., 562). It amended more than twenty sections of the municipal code, but the changes effected may be summarized as follows: The boards of public service and of public safety were abolished and in their stead was substituted a director of public service and a director of public safety, appointed by the mayor. The building inspector’s office was transferred from the mayor’s control to the department of public safety, and the workhouse and charitable institutions from the department of public service to the department of public safety. The mayor and the two directors constitute a board of control, and contracts in excess of five hundred dollars are subject to its approval. The civil service is extended and its administration transferred from the department of public safety to three civil service commissioners appointed by the presidents of the board of education, of the sinking fund commission and of the city council
The Paine bill provided that its civil service provisions should take effect from and after June 1, 1908, and the other provisions from and after January 1, 1910. The Paine law provides that the act shall take effect and be in full force on and after August 1, 1909, excepting that the civil service provisions shall be in full force and effect from and after January 1, 1910, and that all elected officers shall serve out their term. In *380 the unreported, case, The State, ex rel. Noble, Auditor, v. Slabaugh, 81 Ohio St., 550, where the question was whether a director of public safety could administer that department before January 1, 1910, the - contention being that inasmuch as contracts in excess of five hundred dollars were subject to the approval of a board of control that could not come into existence until January 1, 1910, and inasmuch as until then there would not be a civil service commission to administer that system, the legislature, notwithstanding it expressly so declared, could not have intended the act to become effective on August 1, 1909, it was held that the act went into effect on August 1, 1909, as therein expressly provided.
The presumption is that the legislature intended the act to take effect at the time it declared the act should be in effect, and the court may not by construction substitute a different time merely to correct defective legislation. The province of construction is to ascertain and give effect to the intention of the legislature, but this intent must be derived from the legislation and may not be invented by the court. To supply the intention ^j.id then give the statute effect according to such intention would not be construction but legislation. Slingluff v. Weaver, 66 Ohio St., 621; 2 Lewis’ Sutherland Statutory Construction (2 ed.), Section 366.
We are now, as we then were, unable to find anything in the act to indicate that the legislature intended the provisions to become effective at a time other than that declared. The different dates could not have resulted from inadvertence. The *381 bill provided that the civil service provisions should go into effect first, while the act postpones them to the other provisions. It was in the power of the legislature to abolish civil service and we are unable to say it did not intend to suspend it. The fact that the act provides that the section creating the office of director of public safety shall go into effect on August 1, 1909, and makes his contracts in excess of five hundred dollars subject to the approval of a board of control that will not exist prior to January 1, 1910, may indicate an oversight, but not an intention to postpone the time the act is declared to take effect.
The question then is as to the rights of the parties under the code, giving the amendment effect at the time prescribed by the act. Section 129 gives the mayor power to appoint and to remove the heads of the .sub-departments of the department of public safety. By Section 147 the police department is a sub-department of the department of public safety, and by Section 148 the chief of police is the head of that sub-department. The power in the mayor to appoint and to remove is a continuing- power, and, no term of appointment of the chief of police being fixed, the chief of police holds his office at the pleasure of the mayor and in the absence of statutory regulation may be summarily removed by the mayor. Section 149 of the municipal code of 1902 was not repealed and that section provides that the chief of .police shall be appointed from the classified list of such department. Section 166 of that code provided that appointments by the mayor should be on probation for such length of time as *382 should be fixed by the rules of the board of public safety. Section 1536-996, Revised Statutes (Bates’ 6 ed.), provides that each officer of the corporation, or any department or board thereof, shall be an elector within the corporation. And Section 186 of the municipal code of 1902 provides that an)'- person in the department of public safety who shall be removed by the mayor shall have the right to appeal to the board of public safety. Section 162 as amended by the Paine law provides that the chief of police shall be dismissed only as provided in Section 152, and that the appeal therein provided to the board of public safety shall be made to the civil service commission as therein provided and under such rules as the commission may adopt.
As already stated, the repeal of the sections providing for a board of public safety was in effect on August 1, 1909, so that there was. no classified list from which to appoint a chief of police; and Section 162 providing that the chief of police shall be dismissed only as provided in Section 152 did not take effect until from and after January 1, 1910, and Section 186 does not apply to the chief of police because as to him special provision is made, so that on August 1, 1909, and from then until from and after January 1, 1910, the only limitation or regulation of the mayor’s power of appointment and removal of a chief of police was that the appointee must be an elector of the city. This raises the questions, when did Section 162 take effect, and was the relator removed before the. section took effect? The act declares that Section 162 shall take effect *383 and be in force from and after January 1, 1910. The terms of office of mayors expired on December 31, 1909, and new terms commenced and new mayors came into office on January 1, 1910, but there is nothing in that fact or in the act to show that the legislature intended the act to take effect on that date, or that its- selection of a date was not purely arbitrary, so that the question is, what is meant by the words from and after January 1, 1910? The word “from” is a word of exclusion, and .excluding January 1, the section was in effect on January 2. In some cases a distinction is made between computations of time from an act done and those from the date or day of the date, including the day of the act done in the former and excluding the day of the date in the latter. 1 Lewis' Sutherland Statutory Construction (2 ed.), Section 185. In Minnesota the day of the passage is excluded where the act provides it shall take effect “from and after its passage.” Parkinson v. Brandenburg, 35 Minn., 294. And in Wisconsin where an act takes effect from and after its passage and publication the day of publication is excluded. O’Connor v. Fond du Lac, 109 Wis., 253. In this state the distinction referred to in Sutherland seems to be made. A law made to take effect from and after its passage is in effect on the day of its passage (The State, ex rel., v. O’Brien et al., 47 Ohio St., 464), while in computing time under a statute making an act unlawful from a day named to another day named, the first is excluded and the last included. The State of Ohio v. Elson, 77 Ohio St., 489. But whether or not the day of an act done should be *384 included, there can be no doubt that the day-named from which the act is to be in effect should be excluded, and that the section was not in effect until January 2, 1910.
This brings us to the question whether the removal of the relator was valid, Section 162 having g'one into effect after the mayor declared the relator removed but before notice to the relator of the removal. The removal without notice and without a hearing, being authorized at the time the power was exercised, was accomplished, although it was not complete until notice to the relator. It was held in Fits’s Case, Cro. Eliz., 12, that a sheriff is not discharged from his office until the new patent is shown to him, and in Boucher v. Wiseman, Cro. Eliz., 440, that the office of sheriff continues until he has regular notice of his discharge. These cases- and others are reviewed by Allen, J., in Holley v. Mayor, etc., of New York City, 59 N. Y., 166, and he then says: “Public policy and justice to the superseded official may require that he shall not be treated as a trespasser, and that his acts shall be valid until he has notice that his authority has been revoked, but further than this, no case has, as yet gone, so far as reported decisions have come under my notice.” In The State, ex rel. Kuhlman, v. Rost, 47 La. An., 53-60, it is said by Nicholls, C. J.: “If the governor had the power to remove him, there was no necessity for official notification to him of the removal to bring it about. The removal of itself operated a divestiture of the office, at least for the purposes of this suit. Had intermediate action taken place before *385 notice in which Cambre had participated in ignorance of his removal, and were the validity of the action taken at that time and under these circumstances contested, a different question would arise.”
From these considerations it follows that the removal of the relator and the appointment of the defendant was authorized, and the question as to whether the relator was an elector is immaterial. The judgment is affirmed.

Judgment affirmed.

Crew, Spear, Davis, Spiauck and Price, JJ., concur.'