WAYNE F. MCGOWN, Deputy Secretary, Department of Administration
You have requested my opinion concerning several questions relating to the requirements for publication of laws and legislative proceedings. You first inquire as follows:
 "The Legislative Audit Bureau has asked how the word `publication' is to be interpreted in Article VII, Section 21, Wis. Const., and indicates that the same question applies to the words `published' and `publication' as used in ss. 985.04 (2) and 990.05, Wis. Stats. More specifically they inquire, does either Article VII, Section 21, or Statute s. 990.05 require newspaper publication and does newspaper publication required under Statute s. 985.04 (2) require full text publication?"
Article VII, sec. 21, Wis. Const., reads as follows:
 "The legislature shall provide by law for the speedy publication of all statute laws, and of such judicial decisions, made within the state, as may be deemed expedient. And no general law shall be in force until published."
The term "general," as used in this constitutional provision, has been broadly construed by our court. That term and the term "public" are synonymous, and "the fact that an act is local or special does not necessarily militate against its being public and general." Milwaukee County v. Isenring (1901), 109 Wis. 9,12, 85 N.W. 131; Clark v. Janesville (1859), 10 Wis. 136*. Of course, an act repealing a public or general law is also a public or general law. State ex rel. Voight v. Hoeflinger (1872),31 Wis. 257.
Section 985.04, Stats., implements Art. VII, sec. 21, Wis. Const., and provides:
 OFFICIAL STATE NEWSPAPER; PUBLICATION OF LAWS. (1) The legislature shall declare some newspaper published in Wisconsin to be the official state paper, which shall publish all the laws, advertisements, proclamations and communications required to be published. Any such publication from any of the state agencies shall be deemed official. Until a further *Page 348 
designation is made the Wisconsin State Journal, Madison, is declared to be the official state paper.
 "(2) Every law shall be published once in the official state paper immediately after its approval, in type not smaller than 5 1/2 point, and the costs charged to the legislature."
The Wisconsin Supreme Court has consistently construed Art.VII, sec. 21, Wis. Const., as leaving broad latitude in the legislature in choosing the method by which our laws are to be published. Sholes v. The State (1850), 2 Pin. 499, 2 Chand. 182. See The State ex rel. Cothren v. Lean (1859), 9 Wis. *279, andState ex rel. Martin v. Zimmerman (1939), 233 Wis. 16, 20,288 N.W. 454. Hence it was stated in Sholes v. State, supra, at pp. 511-512:
 "This provision we do not regard as dependent upon or necessarily connected with the provision in relation to printing. While it is true that the employment of the art of printing is the best means of publication, still publication cannot be confined to the limited signification of mere printing, but comprehends the exercise of additional labor and skill. This provision implies a discretion to be exercised in the method of publication; for instance, — that the general laws which cannot be in force until published, shall be published in the public journals, that being the most speedy method; or in pamphlet form, that being more convenient for many purposes; or even by proclamation at the door of the court house in each county, and that the whole body of the laws and the decisions of the supreme court shall be published in the more permanent form of a bound book. . . ."
Likewise, in Mills v. The Town of Jefferson (1865), 20 Wis. *50, where publication of a general law in a county newspaper rather than in the official state newspaper was challenged, the court said, at p. *55:
 ". . . the publication made was unquestionably the best calculated to bring an early knowledge of the law home to the locality and people most concerned in and affected by its provisions. . . . to say that the legislature was not competent to provide a different manner of publication, is to deny its power over the subject of the publication of the laws. . . ." (Emphasis added.) *Page 349 
The legislature has in fact provided several different forms of publication of the statutes and other governmental pronouncements having the force and effect of law. In response to the direction of Art. VII, sec. 21, Wis. Const., in addition to sec. 985.04
(2), Stats., the legislature has enacted secs. 35.15, 35.18,35.19 and 35.37, Stats., providing for publication of Wisconsin Session Laws, Wisconsin Statutes, pamphlet laws and Supreme Court Reports, respectively, as well as secs. 227.025 and 227.027, Stats., which provide for publication of administrative rules.
The motivation for Art. VII, sec. 21, Wis. Const., was to insure that persons affected by new laws have notice of their existence, before such laws go into effect. O'Connor v. City ofFond du Lac (1901), 109 Wis. 253, 261, 85 N.W. 327. As pointed out by our court in Clark v. Janesville, supra, at page *183:
 ". . . Courts and people are bound to take notice of general laws; and that upon which their operation depends should be capable of being readily ascertained with the highest certainty. . . ." (Emphasis added.)
Thus, as previously stated in 10 OAG 648 (1921), at pp. 656-657:
 ". . . It would seem that the constitutional purpose of giving the people of the state an opportunity to know with certainty what the law of Wisconsin is can be accomplished only by publishing that law in full, so that one who subscribes to the official state paper for the purpose of obtaining all the laws of the session, or a person who buys a copy of the session laws for the same purpose, will find all the law there without searching further. . . ."
Finally, it appears that the legislature has viewed the constitutional mandate as requiring full text publication.
Section 1 of Wis. Rev. Stats., Ch. 5, p. 61, (1849), provided:
 "The secretary of state, immediately after any general law of the legislature, shall have been deposited with him, shall furnish a copy thereof to the person authorized to print the laws, who shall immediately publish the same in a newspaper printed at the seat of government." *Page 350 
The clear direction of this statutory language, enacted immediately after the adoption of the Wisconsin Constitution in 1848, is to provide that all general laws of the legislature be published verbatim. See State ex rel. Cothren v. Lean (1859), 9 Wis. *279, *290, *291. Although the above statutory language has been changed several times up to enactment of present sec.985.04, Stats., the intent to provide for full text publication is no less obvious under our current statutes. Such contemporaneous and long continued practice by the legislature reflects a legislative construction of the Constitution which is entitled to great weight. 16 Am. Jur. 2d, Constitution Law, secs. 83 and 85, pp. 264-265, 267-269.
From the foregoing, it is evident that the initial publication of new laws required by Art. VII, sec. 21, Wis. Const., may be accomplished in any manner which effectively and fully informs the public. Newspaper publication under sec. 985.04, Stats., is simply a current mode which the legislature is using to accomplish that purpose. Other methods of publication can be utilized. However, it is also clear that Art. VII, sec. 21, Wis. Const., requires full text publication of our laws and that publication in substance would not be adequate to provide proper notice of the enactment of general legislation to the public at large.
The legislature has in fact already exercised its discretion by allowing administrative rules "having the effect of law" to be published in the Wisconsin Administrative Code or register in the manner prescribed in sec. 35.93, Stats. See secs. 227.01 (3) and 227.025, Stats. A system of establishing effective dates and publishing rules in the official state paper on an emergency basis is also provided for in secs. 227.026 and 227.027, Stats. I find no reason why a similar procedure could not be followed for the publication and dissemination of state statutes.
As always, however, caution must be taken when changing the method of publication to insure that the act designed to give notice of the existence of the law actually does give notice and takes place sufficiently in advance of the law going into effect. In this regard, the standards already applicable to administrative rules would form a legitimate point of first inquiry.
Your first question also refers to sec. 990.05, Stats., which provides: *Page 351 
 "Laws and acts; time of going into force. Every law or act which does not expressly prescribe the time when it takes effect shall take effect on the day after its publication."
This statute simply states when a published law takes effect, and although it necessarily refers to "publication" and evolved in the context of newspaper publication, the statute in no way requires newspaper publication. However, the statute does highlight the need for actual and fully completed publication as prerequisite to a law becoming effective. See O'Connor v. City ofFond du Lac, supra, at p. 261. As stated previously in 10 OAG 1099 (1921), at p. 1101:
 "Publication implies something more than printing. If to be done through the newspapers, publication is effected only when the papers are issued to the public. The constitution forbids a law being effective until it is actually published."
 You next ask whether the legislature may amend sec. 985.04, Stats., to provide for publication of laws in abstract or synopsis form, in much the same manner as presently allowed in the case of the publication of the "proceedings" of local governing bodies. Sec. 985.01 (2) (a), Stats.
 This question has been answered by my response to your first inquiry. Although nothing precludes the legislature from amending sec. 985.04, Stats., to provide for newspaper or other publication of an abstract or synopsis of all new statutes, no such publication would satisfy the constitutional requirement of public notice of our general laws by full text publication.
 Your last question asks whether Art. IV, sec. 20 and Art. VIII, sec. 8, Wis. Const., require the printing of a list of the individual legislators voting yea or nay in the legislative journals or whether a printing of the total yea vote, together with a listing of the names of those legislators voting nay, abstaining or absent, would suffice.
 Article IV, sec. 8, Wis. Const., provides that each house of the legislature may determine the rules of its own proceedings, and Art IV, sec. 10, Wis. Const., requires each house to keep and publish a journal of its proceedings, except parts requiring secrecy. *Page 352 
Article IV, sec. 20, provides:
 "The yeas and nays of the members of either house on any question shall, at the request of one-sixth of those present, be entered on the journal." (Emphasis added.)
Article VIII, sec. 8, provides:
 "On the passage in either house of the legislature of any law which imposes, continues or renews a tax, or creates a debt or charge, or makes, continues or renews an appropriation of public or trust money, or releases, discharges or commutes a claim or demand of the state, the question shall be taken by yeas and nays, which shall be duly entered on the journal; and three-fifths of all the members elected to such house shall in all such cases be required to constitute a quorum therein." (Emphasis added.)
The taking of a yea and nay vote and entry thereof on the journals of both houses is also required by Art. V, sec. 10 (bills passed over the veto of the governor), and Art. XII, sec. 1 (constitutional amendment proposals). See also Art. VIII, sec. 6 (laws authorizing public debt), Art. IV, sec. 26 (bills increasing teachers' retirement benefits), and Art. XI, sec. 4 (enactment of general banking laws), which provide that the vote on such matters "be taken by yeas and nays," but do not require their entry upon the journal. Integration of Bar Case (1943),244 Wis. 8, 22-23, 11 N.W.2d 604, 12 N.W.2d 699.
In Integration of Bar Case, supra, our court clearly stated the impact of such constitutional provisions as those referred to in your question. The court there stated, at p. 23:
 "By the great weight of authority it is held that an enrolled bill will be declared void where the journals fail to show upon final passage thereof a yea and nay vote was taken which together with those voting for and against a measure was spread upon the journals if the constitution so requires. . . ."
And further at p. 27:
 "We hold in accordance with the weight of authority upon that question that where the constitution requires the entry in the journal of certain steps in the enactment of a bill that it must *Page 353 
appear from the journal that those steps have been taken or the act was not validly enacted. . . ."
Thus, in State ex rel. General Motors v. Oak Creek (1971),49 Wis.2d 299, 182 N.W.2d 481, in noting that the legislative journals did not reveal that the yeas and nays were taken or entered in the journals of either house of the legislature, as required by Art. VIII, sec. 8, the court stated at p. 322:
 ". . . where a tax is enacted it is mandatory that yeas and nays be recorded in the legislative journals. This defect alone is sufficient to render sec. 70.11
(8m), Stats., a nullity."
With respect to the object of the constitutional requirement, the court also pointed out, at pp. 322-323:
 "`. . . The object and purpose of art. VII, sec. 8, of the constitution above cited seems very clear. In important legislation of the character there indicated it was deemed necessary that there should be a quorum present consisting of three fifths of all members of either house. The requirement that the question should be taken by yeas and nays and duly entered on the journal was deemed necessary both to furnish proof that the law was enacted by a majority and to fix responsibility on each member voting. . . .' State ex rel. Crucible Steel Casting Co. v. Wisconsin Tax Comm. (1925), 185 Wis. 525, 534, 201 N.W. 764." (Emphasis added.)
It is evident from the foregoing that Art. IV, sec. 20, and Art. VIII, sec. 8, as well as Art. V, sec. 10 and Art. XII, sec.1, Wis. Const., require that the individual legislators voting yea or nay on particular matters be identified by entries in the respective journals of each house of the legislature. However, such provisions also leave a large discretion with the legislature as to the contents of the journals. See Integrationof Bar Case, supra, p. 23. As indicated in State ex rel. Postelv. Marcus (1915), 160 Wis. 354, 389, 152 N.W. 419, the framers of the Constitution understood that the unqualified requirement that something be "entered" in the journals could be satisfied by a simple but intelligible reference:
 "We reach the conclusion that ever since the adoption of the constitution the legislative and executive branches of the government, as well as the people themselves, have construed *Page 354 
the word `entered' as meaning simply entered by title, number, or brief description in such manner as to make identification certain; that this is a permissible and not unusual meaning of the word; and that such meaning must now be held to be controlling under the well established principles of practical construction." (Emphasis added.)
Thus, as long as the constitutional mandate is in fact satisfied, the manner in which the yeas and nays of individual legislators are entered in the journal is subject to legislative control. The senate and assembly have, of course, established rules in reference to their own procedure in some detail, including rules concerning the recording of attendance, the noting of absences and the taking and recording of votes. See Senate Manual, dated July 1, 1973, and Assembly Manual, Rules of the Assembly, adopted January 2, 1973. The rules of both the senate and assembly provide for a roll call of the members as the first order of business of each daily session and require that the names of those present or absent be entered in the journal for that day. In my opinion, if these rules are followed, and all members not voting aye are individually identified by name in the journals under appropriate descriptive references indicating whether they voted no on the measure, were absent or not voting or were paired on the question, then, there is no reason why anything more than the number of members voting aye need be set forth in the journals. The results of any roll call vote taken during that day need only be compared with the attendance list to determine the names of those individual legislators who voted aye on a question.
RWW:JCM *Page 355