The State ex rel. Court of Honor of Illinois vs. Giljohann.

THE STATE EX ·REL. COURT OF HONOR OF ILLINOIS, Respondent, vs. GILJOHANN, Commissioner of Insurance, Appellant.

*September 7 — September 24, 1901.*

Mandamus: *Appeal: Return: Motion to quash: Foreign insurance companies: License: Powers of insurance commissioner.*

1. A proceeding by *mandamus* is a civil action, and the awarding of a peremptory writ a final judgment, within the meaning of the appeal statutes.
2. A motion to quash the return to an alternative writ of *mandamus* cannot properly be made.   Relator should demur or answer.
3. Under secs. 1955e, 1955f, 1968, Stats. 1898 (requiring foreign assessment insurance companies to comply with certain conditions before being admitted to do business in this state, and requiring the commissioner of insurance to investigate their character and standing before admitting them, for the purpose of ascertaining whether such conditions have been complied with), said commissioner is entitled to a reasonable time in which to make the investigation, and to some extent is called upon to exercise discretion in passing upon the application and to pass judgment upon the facts disclosed by the investigation.  He should not be compelled by *mandamus* to issue a license, where, although he had previously refused on insufficient grounds to issue the same, he had notified the applicant of a reconsideration of such action and, at the time of the issuance of the alternative writ, was proceeding to make proper examination into the affairs and condition of the company.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

On March 6, 1901, the relator obtained from the trial court an alternative writ of *mandamus,* requiring the defendant, as insurance commissioner, to show cause why he should not issue to it a license in due form of law, under and according to the terms and provisions of sec. 1955e, Stats. 1898, and the laws of Wisconsin applicable thereto, authorizing the relator to do business in this state under and according to the terms and provisions of the laws of this state. Such writ, among other things, in effect, alleged that the relator had made application to the defendant for such license January 22, 1901; that it had complied with all the requirements of the statutes entitling it to such license; that the commissioner of insurance had admitted that the application of the relator was in all respects in conformity with the law, but refused to grant to the relator a license to do business in this state solely on the ground that he did not consider that its rate of assessment as shown by its constitution and by-laws, as therein set forth, was high enough to do business on as such association, and gave, and has continued to give, and still gives, that as his only reason for refusing to grant such license, which had been duly demanded by relator, and the fee required by law therefor ($50 in gold) duly and legally tendered to him for that purpose before the filing of the petition for such writ, which tender was refused by the commissioner, but which was still kept good by the relator, and it had been continuously since and still was ready to pay the same at any time; that the relator had complied in all respects with all the requirements of the laws of this state and of Illinois entitling it to a license in this state, and was entitled to such license; that the rate of assessment upon which it was then doing business, and upon which it had been doing business since its incorporation, is fixed and set forth in its constitution, as therein stated; that

the rate of assessment was sufficiently high to enable it to pay claims against it, and to transact its business under its charter and constitution and by-laws; that the commissioner made no claim that any of the statements and papers so filed in his office were untrue or not the fact, and made no claim that the relator had not fully complied with all the provisions of the law, and admitted that it was entitled to a license, except that he had the discretionary power to decline to issue it solely for the reason that its rates of assessment were not satisfactory to him; that February 27, 1901, the commissioner, after repeatedly giving as his reason for not issuing the license its low rate of assessment, and without suggesting that he desired to make any other or further examination of the affairs of the relator, wrote this letter to the relator, to wit: "I have reconsidered your application, dated Jan. 22d, 1901, for a license to transact business in this state, and will send two examiners of this department to your city to make an examination of your organization, as required by paragraph 241 of the insurance laws of this state. Trusting this will be satisfactory to you, I remain, sincerely yours, *Emil Giljohann*, Commissioner of Insurance;" and at the same time inclosed a copy of the same to the relator's attorney, with the following note: "I inclose a copy of a letter forwarded this day to Mr. A. L. Hereford, supreme chancellor of the *Court of Honor*, in relation to his application for permission to transact business in this state. Sincerely yours, *Emil Giljohann*, Commissioner of Insurance;" that such letters were not written until after the relator had employed an attorney to institute proceedings against the commissioner to compel him to give to the relator a license to do business in the state, and after such attorney had apprised the commissioner of the fact that he was so employed; that a demand was made upon the commissioner for a license to the relator after the communication was delivered, and the same was refused solely on the ground that the rate of assessment was too low. .

On March 8, 1901, the defendant made return to such writ, and, among other things, alleged that February 6, 1901, he gave to the relator his reasons for refusing such application, to the effect that the Fraternal Congress, of which the relator was a member, did, at its meeting in Boston, in August, 1900, adopt a uniform bill, and recommended its passage by the legislatures of the several states, requesting insurance commissioners to assist in its passage, to the effect that no association should be admitted to transact business within this state without first showing that its mortuary assessment rates are not lower than indicated in the mortality tables given; that the pending bill, if passed, would preclude the admission of the relator from entering the state with the table of rates one third lower than therein required, and that, if the bill did not pass, he should still require the rates recommended in the bill; that thereafter, and upon further consideration of such application, he decided to reconsider such application and to make further investigation as to whether or not the relator was or is entitled to do business in this state, and thereupon, and on February 27, 1901, he sent to the relator the letter mentioned in the writ, and the note to its attorney, as therein mentioned; that on the next day, February 28, 1901, the relator's attorney, Mr. Chynoweth, came to the defendant, and requested him not to send examiners to the city of Springfield to make an examination of the relator; that, upon the defendant's deciding to reconsider the application of the relator for such license, the defendant commenced an investigation of the affairs and condition of the relator to determine whether or not it was solvent and had fully complied with the provisions of law entitling it to do business in this state, and that the defendant had not yet fully completed such examination and investigation, and had not yet fully determined whether or not the relator was entitled to do business in this state; that the defendant, for

further answer and return to the relation and writ, denied
that his refusal to grant a license was based solely upon the
ground that the rate of assessment of the relator was too
low,— wherefore the defendant demanded judgment quash-
ing and dismissing the alternative writ.

On April 17, 1901, the defendant was, on motion of the
relator, ordered to make a supplemental return, on the
ground that the one previously made was "indefinite and
uncertain" in that it did not specify or designate what ex-
amination and investigation he had made or was making.

On April 23, 1901, the defendant made such supplemental
return, and therein stated, among other things, that when
he denied the application of the relator, February 6, 1901,
he believed that he had legal right to do so and that it was his
duty to refuse the license on the ground that the assessment
rates were insufficient to protect holders of certificates of
the relator; that on or about February 27, 1901, the defend-
ant presented the question as to whether he had the legal
right to refuse such license upon the grounds specified to
the attorney general, and was then and there advised by
him that, technically, it was questionable whether he had
the right to refuse such license upon such ground; that he
thereupon wrote to the relator the letter of February 27,
1901, set out in full in the original return and also in the
writ; that February 28, 1901, Mr. Chynoweth came to the
defendant's office, and stated to him that the relator did not
want the defendant to send any one to Springfield to make
examination of the organization and affairs of the relator,
and requested him not to make such examination, as the
rights of the parties were determined by the facts as they
then existed, and that he intended to make application to
this court for a writ of *mandamus* compelling the defend-
ant to issue such license to the relator, and that he wanted
the rights of the relator to be adjudged as they then were;
that March 1, 1901, said attorney made application for such

The State ex rel. Court of Honor of Illinois vs. Giljohann.

writ to this court, and the same was denied March 19, 1901; that February 27, 1901, the defendant commenced a careful examination of all the papers and documents filed in his office by the relator upon making such application, taking the matter up and going over the same carefully with his assistant; that such examination was not fully completed when the alternate writ was served upon him; that the defendant intended and still intends to send examiners to Springfield to make examination into the condition and affairs of the relator, as provided in sec. 1968, Stats. 1898, and that the defendant only refrained from sending such examiners to Springfield by reason of such action and statements of the relator's attorney, and the advice of the attorney general as to the effect of such application for an issuance of said alternative writ.

On May 13, 1901, the original order or judgment was entered, quashing the return and supplemental return to the alternative writ, and ordering and adjudging that the peremptory writ issue. On motion of the relator the trial court, on June 17, 1901, made an order or judgment, reciting therein that each and every allegation contained in the petition for the alternative writ and recited in that writ was therein determined and adjudged to be true, and thereupon it was ordered and adjudged, in effect, that all previous proceedings quashing the return and supplemental return be, and the same were thereby, vacated, set aside, and held for naught; that such return and supplemental return, and both and each of them, be, and the same were thereby, quashed; and it was therein further ordered and adjudged that a peremptory writ of *mandamus* issue out of the trial court, commanding the defendant, as commissioner of insurance, to forthwith issue in due form of law, to the relator, the license prescribed by secs. 1955e, 1955f, Stats. 1898, and acts amendatory thereto, and in accordance with the laws of this state applicable thereto, to do business as an insurance association. From that order or judgment the defendant appeals.

The State ex rel. Court of Honor of Illinois vs. Giljohann.

For the appellant there was a brief by the *Attorney General*, and oral argument by *C. E. Buell*, first assistant attorney general.

For the respondent there was a brief by *H. W. Chynoweth*, attorney, and *Wm. B. Risse*, of counsel, and oral argument by *Mr. Chynoweth*.

CASSODAY, C. J.   Counsel for the relator contends that the defendant could not appeal from the order and judgment quashing both returns and awarding a peremptory writ of *mandamus*.   One ground of such contention is that it is a judgment, and not an order.   This court has treated the awarding of such writ as a judgment, and also referred to it as an order or judgment.   *State ex rel. Voight v. Hoeflinger*, 31 Wis. 257, 260, 264; *Rork v. Smith*, 55 Wis. 67; *State ex rel. Taylor v. Delafield*, 64 Wis. 218; *State ex rel. Star Prairie v. St. Croix Co.* 83 Wis. 340, 343, 344, 348.   If allowed to stand, it certainly determines the rights of the parties, and is, in effect, a judgment.   The supreme court of the United States has held that "an order awarding a peremptory writ of *mandamus* is a final judgment in a civil action, within the meaning of that term as used in the statute regulating writs of error to the United States supreme court."   *Davies v. Corbin*, 112 U. S. 36.   This being so, counsel contends that such judgment was not rendered in "an action, either civil or criminal," and hence that it cannot be reviewed on appeal, but only upon writ of error.   It is conceded that if it is a judgment in a civil action it may be reviewed on this appeal.   Nearly twenty years ago this court, after hearing able and learned counsel, and after careful deliberation, held that "a proceeding by *mandamus* is essentially a suit, and when issue is joined by the return it becomes a civil action, within the meaning of the statutes, and as to the form and sufficiency of the several pleadings

must be governed by the same rules which prevail in other civil actions." *State ex rel. G. B. & M. R. Co. v. Jennings*, 56 Wis. 113. The ruling in that case has been steadily adhered to since. *State ex rel. Taylor v. Delafield*, 64 Wis. 218, 220; *State ex rel. Drury v. Lincoln*, 67 Wis. 274, 276; *State ex rel. Buchanan v. Kellogg*, 95 Wis. 678; *State ex rel. Rice v. Chittenden*, 107 Wis. 355. See, also, *Davies v. Corbin*, *supra*. The result is that the appeal did bring up the judgment for review.

One portion of that judgment quashed the return and the supplemental return. The statute provides that " whenever a return shall be made to any such writ, the person prosecuting the same may demur or answer all or any of the material facts contained in the same return." Sec. 3451, Stats. 1898. *State ex rel. G. B. & M. R. Co. v. Jennings*, 56 Wis. 117, 118. The relator did not demur to nor answer the return in this case. A motion to quash may properly be made to the writ, but not to the return. Such motion to quash is in the nature of a demurrer. *State ex rel. Cothren v. Lean*, 9 Wis. 279. Since the relator did not take issue with either of the two returns, we must assume the facts therein stated to be true.

The important question is whether such facts are sufficient to show that the relator is not entitled to the writ. The statute requires certain conditions to be complied with before certain foreign insurance companies, like the relator, can be admitted to do business in this state. Sec. 1955e, Stats. 1898. The statute also provides:

" The commissioner shall investigate the character and standing of all such organizations applying for license, and if approved by him, and if the conditions hereinbefore imposed have been complied with, he shall notify it of his approval: . . . provided, that no license to do business in this state shall be issued to any such organization to whose country, state or territory any Wisconsin corporation, society, order or association doing business on the assessment

plan, which has complied with the requirements of the laws
of this state, has been or would be refused admission to do
business on compliance with the laws thereof. The commis-
sioner shall also refuse license to do business to any foreign
organization whose name or title he shall deem too similar
to one already appropriated or likely to mislead the public.
These conditions having been complied with, he shall issue
to each organization a license, after which it may transact
business in this state; and said license shall continue in force
until revoked pursuant to law; provided, that it shall be
*cause for refusing such license* or for revoking it if the litera-
ture used by the organization in soliciting business is mis-
leading in respect to the business done or in conflict with
the law of this state." Sec. 1955*f*, Stats. 1898.

The statute also provides that:

"The commissioner of insurance may address inquiries to
any insurance corporation doing business in this state or any
officer thereof in relation to its doings or condition or any
other matter connected with its transactions; and it shall be
the duty of every corporation or officer so addressed to
promptly reply in writing to such inquiries; and, whenever
he shall deem it expedient so to do, or when any responsible
person shall file with him written charges against any such
corporation alleging that any return or statement filed by
it with such commissioner is false or that its affairs are in
an unsound condition, he shall, in person, or by some one to
be appointed by him for that purpose, . . . examine
into its affairs and condition; and it shall be the duty of the
corporation, its officers or agents, to cause its books to be
opened for inspection. . . . Whenever it shall appear
to the said commissioner from his own examination or the
report of the person appointed by him that the condition of
any foreign company examined is unsound, he shall revoke
the certificate granted such company and cause a notification
thereof to be published in the official state paper and mail
a copy thereof to each agent of the company, and the agent
or agents thereof, after such notice, shall be required to dis-
continue doing business for such company. The commis-
sioner shall, in like manner and upon like conditions, exam-
ine insurance corporations *applying for admission* to trans-
act business in this state, and if the affairs or condition of
any such corporation do not fully meet the requirements of
law he shall withhold his certificate." Sec. 1968, Stats. 1898.

It appears from the return that the defendant was in good faith seeking to do his official duty, as prescribed in these statutes, when he was stopped by the action of the relator.

Counsel for the relator seeks to limit the inquiry to the question whether its rate of assessment was too low, and this is put upon the ground that the defendant, on February 6, 1901, refused the license on that ground. But on February 27, 1901, the defendant reconsidered such action, and proposed to make examination into the affairs and condition of the relator, as stated. The return expressly denied that the defendant refused to grant such license "solely upon the ground that the rate of assessment of said relator was too low." The defendant was prevented from completing such examination as he was expressly authorized by the statutes quoted to make, and which seems to have been his official duty to make, if necessary, in order to act intelligently on the application. He, as such commissioner, was to be satisfied that the relator was entitled to such license, before he was required to issue the same to him. In order to be thus satisfied, he was entitled, if necessary, to a reasonable time to examine and investigate into the affairs and condition of the relator. He was, to some extent, called upon to exercise discretion, and to pass judgment upon the facts when ascertained by such examination and investigation. It is well settled, as this court has repeatedly declared, that, "when administrative officers refuse to perform a mere ministerial duty imposed upon them by law, and which they are thereby bound to perform without further question, then, if they refuse, a *mandamus* may issue to compel them to perform such duty; but, when such official act requires the exercise of judgment or discretion on the part of such officers, then a *mandamus* will not be granted." *State ex rel. Gericke v. Mayor of Ahnapee*, 99 Wis. 326, and numerous cases there cited; *State ex rel. Schermerhorn v. McCann*, 107 Wis. 348; *State ex rel. Buchanan v. Kellogg*, 95

Wis. 679. Even to that rule there is an exception. *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 623. We must hold that the returns stated a good defense.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to quash the writ and dismiss the relation.