STATE EX REL. CITY OF BARABOO, Appellant, vs. PAGE, Respondent.

*January 7—April 1, 1930.*

*V. H. Cady* of Baraboo, city attorney, for the appellant.

For the respondent there was a brief by *Hill & Miller* of Baraboo, and oral argument by *J. H. Hill.*

The following opinion was filed February 4, 1930:

FRITZ, J. Upon consideration of all facts alleged in the petition, including paragraphs 3, 4, 5, and 9, we have concluded that the court did not err in granting respondent's motion to quash the alternative writ. That conclusion ob-

viates the necessity for further consideration of the alleged errors of the court in enjoining the proposed adverse examination of the respondent, and in ordering paragraphs 3, 4, 5, and 9 stricken from the petition.

The consideration of the alleged error in granting respondent's motion to quash the alternative writ involves the following facts which are alleged in relator's petition as originally filed, and which, as therein alleged, must be assumed to be true in passing upon the motion to quash (*State ex rel. Court of Honor v. Giljohann,* 111 Wis. 377, 384, 87 N. W. 245) :

The city of Baraboo is a city of the fourth class. H. K. Page is proprietor, editor, and publisher of the Baraboo News-Republic, which, since February 18, 1929, is the only newspaper published in Baraboo. On that date the Baraboo Daily Republic, which until then was the official newspaper of the relator, suspended publication and its subscription list was purchased by the proprietor of the Baraboo News, which has since been published as the Baraboo News-Republic.

On April 15, 1924, the city council of Baraboo adopted a resolution which provided for the selection of an official city newspaper for the official publication of all ordinances and resolutions adopted by the council, for the compensation prescribed by statute; that such paper should also print, pursuant to "copy" to be furnished by the city clerk, a report of council proceedings, as news matter; and that—

". . . in the event the council shall, at the close of any year, deem that such official newspaper has substantially complied with the publication of such proceedings as hereinabove prescribed, such official newspaper shall be paid for such annual service, in addition to the sum provided for the official publication of ordinances and kindred official matter, the sum of $100."

On February 14, 1929, the city council adopted an ordinance fixing the salaries and compensation of various city

officers to be chosen in April, 1929, including that of the official newspaper, which was fixed at "$100 per year for publishing all council proceedings."

Before holding the annual city council meeting on April 16, 1929, the respondent Page, as publisher of the Baraboo News-Republic, solicited council members to have his paper designated as the official city newspaper, and he was present when the city council "chose and elected" that paper as the official newspaper for the year commencing May 1, 1929, and, as proprietor and publisher of that paper, "accepted such selection and choice" of the paper "as official newspaper in and for the city of Baraboo."

Thereafter Page refused to print such city council proceedings unless the relator awarded more compensation than the so-called salary of $100 per year. He did print, in an inconspicuous place, the proceedings of a city council meeting which was held on May 9, 1929, but refused to print the prepared copy of the proceedings of a city council meeting held on May 23, 1929, and served notice on the city clerk that no further publication of such council proceedings would be made by him in his newspaper. He printed the three ordinances which were adopted at that meeting, but only mere excerpts of some of the proceedings.

The authority of the city of Baraboo, as a city of the fourth class, to publish the proceedings of its city council, is based on sec. 62.11 (4), Stats., which, so far as material, provides:

"Proceedings of the council shall be published in the newspaper designated under section 62.10 in such manner as the council shall direct. Ordinances shall be published in the official city newspaper within fifteen days of passage. . . ."

Sec. 62.10, Stats., so far as material herein, provides:

"(2) In cities of the fourth class, the council, at its first meeting or as soon as may be, shall designate one or more newspapers published in the city, if any, . . . for publica-

tion of the council proceedings and as the official city newspaper for the publication of the city advertising for the ensuing year. The council shall fix the price at not to exceed the legal rate for like work. . . ."

"(3) The publisher, before the claim for the publication is audited, shall file with the clerk proof of publication by affidavit of the printer or foreman, attached to a copy of the matter published, stating the date or dates of publication. Such affidavit shall be conclusive evidence of publication for the purpose of audit."

"(4) If for any reason any city shall at any time be without an official city newspaper, matters required to be published may be published in any newspaper in the city designated by the council, at not more than the legal rate for like work, or if there be none such, shall be posted for a like length of time in two public places in each ward."

Those statutes neither create, nor authorize the municipality to create, any public office. They do not constitute, or authorize the city to constitute, the proprietor, publisher, or editor of the official newspaper a public officer. They merely authorize the city to enter into a contractual relationship with the publisher of a newspaper which the city shall designate annually for the publication of its council proceedings. That contractual relation does not partake of the nature of a public office.

As stated in *State ex rel. Brown County v. Myers,* 52 Wis. 628, 632, 9 N. W. 777: "There is a distinction between an office and a mere service or employment." "An office is where, for the time being, a portion of the sovereignty, legislative, executive, or judicial, attaches, to be exercised for the public benefit." *U. S. ex rel. Boyd v. Lockwood,* 1 Pin. 359, 363.

No portion of such sovereignty is vested in such an official newspaper or its proprietor or publisher. They are not required to take an oath, and they exercise none of the functions of sovereignty, which are some of the usual character-

istics of public office. *Sieb v. Racine,* 176 Wis. 617, 624, 187 N. W. 989.

Consequently, in the case at bar, if the council, in connection with designating the Baraboo News-Republic as the official city newspaper, had fixed "the price for publishing the council proceedings at not to exceed the legal rate for like work"—sec. 62.10 (2),—and the defendant had accepted such an appointment, there would have been a valid contract between the parties, but the resulting relationship would have been merely contractual.

However, the council did not comply with the requirement of sec. 62.10 (2). Instead of fixing the price "at not to exceed the legal rate for like work," the council arbitrarily proposed to pay a lump sum of $100 per year for publishing the proceedings. The legal rate for like work, *i. e.* for publishing "legal notices" (which by virtue of sec. 331.26, Stats., includes every notice and advertisement "of any description required to be published by law or in pursuance of any law"), is fixed by sec. 331.25 (1), Stats., at not over one dollar per folio for the first insertion, and seventy cents per folio for later insertions, in newspapers published in counties like Sauk county, in that the population thereof does not exceed 200,000. Arbitrarily fixing the price at $100 per year is not a valid exercise of the authority granted by sec. 62.10 (2). A lump sum, fixed at the commencement of a year, in advance of knowledge as to the actual extent of the publications that will be made during the ensuing year, may turn out to be in excess of the amount payable at the maximum legal rate. The only safe way of avoiding that illegal consequence is to comply with the statute by fixing in advance a rate per folio which does not exceed the legal rate, and then, after publication, computing the publisher's compensation for the folios actually published at that fixed rate per folio. Then the parties can also comply with sub.

(3) of sec. 62.10, Stats. (hereinbefore quoted), which prescribes the manner of auditing the publisher's claim for compensation upon his filing an affidavit with an attached copy of the matter published. Because of the failure of the council to comply with sec. 62.10 (2) by fixing a price as directed by that section, no valid contract resulted, even though the defendant, as alleged in the petition, may have accepted the city's invalid proposition.

But, even if the proposed contract had been valid, the city's only remedies against the defendant would have been to hold him for breach of contract, and for the forfeiture provided in sec. 331.24, Stats. *Mandamus* does not lie to compel the performance of a mere contractual obligation.

In *Board of Education v. State ex rel. Reed,* 100 Wis. 455, 462, 76 N. W. 351, the court said:

"The question, therefore, arises whether the court, by proceedings in *mandamus,* can entertain the relator's case, and grant him the relief he has prayed.

"It is, we think, too plain for controversy that the relator's remedy is the very plain and common one that any party has against one with whom he has made a contract which such other neglects or refuses to perform, namely, an action for the recovery of such damages as he has sustained in consequence of such neglect or refusal. He has a plain and adequate remedy by action at law. The existence or nonexistence of an adequate and specific remedy at law, in the ordinary forms of legal procedure, is therefore one of the first questions to be determined in all applications for the writ of *mandamus;* and whenever it is found that such remedy exists, and that it is open to the party aggrieved, the courts uniformly refuse to interfere by the exercise of their extraordinary jurisdiction by *mandamus.*"

See, also, *State ex rel. Wolf v. La Crosse Lutheran Hospital Asso.* 181 Wis. 33, 193 N. W. 994; *State ex rel. Burg v. Milwaukee Medical College,* 128 Wis. 7, 106 N. W. 116; *State ex rel. Superior v. Duluth & S. B. Co.* 171 Wis. 283, 177 N. W. 332.

For the reasons stated, no error was committed in granting defendant's motion to quash the alternative writ of *mandamus*.

*By the Court.*—Order quashing the alternative writ of *mandamus* is affirmed.

A motion for a rehearing was denied, with $25 costs, on April 1, 1930.