362

STATE EX REL. WEMBER and others, Respondents, vs.
KINGSTON, Commissioner of Banking, Appellant.

*February 5—March 6, 1934.*

For the appellant there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

For the respondents there was a brief by *Lamfrom, Tighe, Engelhard & Peck* of Milwaukee, and oral argument by *A. J. Engelhard.*

NELSON, J.   It is well established that a motion to quash an alternative writ of *mandamus* is regarded as a demurrer. *State ex rel. Cothren v. Lean,* 9 Wis. *279; *State ex rel. Sherman v. Common Council,* 20 Wis. *87; *State ex rel. Court of Honor v. Giljohann,* 111 Wis. 377, 87 N. W. 245; *State ex rel. Baraboo v. Page,* 201 Wis. 262, 229 N. W. 40.

The question for decision, therefore, is whether the petition of the relators states a cause of action against the Commissioner of Banking.   No claim is made by the commissioner that the articles of incorporation do not fully comply with the provisions of sec. 222.01 of the 1931 Statutes. The whole controversy hinges on the meaning of the words "approved by the Commissioner of Banking," found in sec. 222.03 (2), which in part provides:

"Such original articles of incorporation shall be filed with the Commissioner of Banking.   A true copy of such articles of incorporation, verified as such by the affidavit of two of the signers thereof, together with a certificate of the Commissioner of Banking showing the date when such

articles were filed and approved by the Commissioner of Banking, shall be recorded, . . ." etc.

The attorney general contends that the language "approved by the Commissioner of Banking" confers upon the commissioner discretionary authority to approve or disapprove such articles. The relators contend that that language confers no authority upon the commissioner other than to examine the articles for the purpose of ascertaining whether they comply with the law relating to the organization of a mutual savings bank, that the duty of the commissioner is merely ministerial, and that if the articles comply with the law it is the duty of the commissioner to approve them and to attach his certificate to the true copy thereof.

The attorney general attempts to sustain his contention by pointing to the broad discretionary powers which the legislature has conferred upon the Commissioner of Banking with respect to the organization of state banks, sec. 221.01 (2). The argument is not persuasive when it is considered in connection with the various banking laws that have been enacted by the legislature during the past thirty years.

In 1903 the legislature enacted ch. 234, which was "An act for the creation of banks and for the regulation and supervision of the banking business." That chapter was a comprehensive revision of our banking laws. The act contained five chapters. Ch. I related to the banking department; ch. II to state banks; ch. III to mutual savings banks; ch. IV to miscellaneous, and ch. V to the repealing clause. Ch. II, sec. 3, contained the following language:

"A like verified copy and certificate of the Commissioner of Banking, showing the date when such articles were filed and approved by the Commissioner of Banking, . . ." etc.

Ch. III, sec. 3, required the organizers of a mutual savings bank merely to make, sign, and acknowledge a certificate in writing, etc., and to record the same in the office

of the register of deeds of the county in which the business of the bank was to be carried on, and to then deposit the same in the office of the Commissioner of Banking. Several legislatures since 1903 have conferred broad discretionary powers upon the commissioner to approve or disapprove applications for the incorporation of state banks. Ch. 749, Laws of 1913; ch. 441, Laws of 1915; ch. 555, Laws of 1921. These laws, and others which might be mentioned, evince a clear intention on the part of the legislature to grant to the commissioner broad powers as to approving or disapproving applications for the organization of state banks.

While it is clear that the legislature has been particularly concerned with respect to the organization of state banks, it has manifested no such concern with respect to the organization of mutual savings banks. By ch. 721, Laws of 1913, the legislature amended the law relating to the organization of such banks and provided that a true copy of the articles of incorporation, verified as such, should be filed with the Commissioner of Banking, and when "filed and approved by the Commissioner of Banking" should be recorded in the office of the register of deeds. While the legislature has several times amended the laws relating to mutual savings banks it has not seen fit to confer upon the commissioner the power or authority to investigate and to approve or disapprove applications for mutual savings banks, as it has done with respect to state banks. Sec. 221.01 (5), (6).

In 1909 the legislature enacted ch. 186, relating to the organization of trust company banks. That act provided in substance that such banks shall be organized pursuant to the provisions of subchapter II relating to state banks, and shall be subject to all the provisions, requirements, and liabilities of subchapters I and II, so far as applicable.

At no time has the legislature enacted any law which incorporated or attempted to incorporate the provisions of ch. 221, relating to the organization of state banks, into

ch. 222, which provides for the organization of mutual savings banks. We think this is particularly significant since all of the applicable provisions of ch. 221, relating to the state banks, were made applicable to the organization of trust company banks. Ch. 186, Laws of 1909, now ch. 223, Stats.

We are not concerned with the reasons which induced the legislature to give broad discretionary powers to the Commissioner of Banking relative to the organization of state and trust company banks but not of mutual savings banks. However, it appears that mutual savings banks are organized without capital stock and are not authorized to engage in what is generally known as the banking business. The loans made by such a bank are carefully safeguarded. The treasurer only may be paid a substantial salary. Comparatively few mutual savings banks have ever been organized. In 1920 there were only six mutual savings banks in Wisconsin and in 1930 the number remained the same. Reports of Commissioner of Banking, 1920 and 1930.

Since the language, "approved by the Commissioner of Banking," as found in sec. 222.03 (2), does not confer discretionary power upon the Commissioner of Banking, it was his duty, within a reasonable time after being afforded an opportunity to examine the articles of incorporation filed, to approve of the same if found sufficient, to attach his certificate to the true copy, and to deliver the same to the relators or their attorneys.

Argument is further made that *mandamus* is not a proper remedy. This argument is based upon sec. 220.035, sub. (3), 1933 Stats., which provides for a review of any final order or determination of the banking review board, unless some other method of review is especially provided by law, by bringing an action in the circuit court for Dane county. It appears from the allegations of the petition that the Commissioner of Banking, after the articles herein were filed with him, referred them to the banking board of review for its opinion as to whether the articles should be approved.

The weakness of this argument is that there is nothing in ch. 222 which authorizes the Commissioner of Banking to refer such matters to that board. Since it is our opinion that the commissioner could act only in a ministerial capacity in approving articles of incorporation of proposed mutual savings banks, he had no authority·to refer the matter to the banking board of review and such reference conferred upon this board no authority or power to act. The articles herein were filed with the commissioner on December 12, 1932. Considerable correspondence was had between him and the attorneys for the incorporators. This action was not commenced until February 1, 1933, and only then after the commissioner had, by letter, indicated that neither he nor the banking board of review would approve of the articles. We think it clear that the relators waited a sufficient time before commencing this action and that, under all of the circumstances,. *mandamus* to compel the Commissioner of Banking to act is a proper remedy.

*By the Court.*—Order affirmed.