WESTGATE HOTEL, INC., Appellant, v. KRUMBIEGEL, Commissioner of Health, City of Milwaukee Health Department, Respondent.

*No. 285.  Argued April 10, 1968.—Decided May 7, 1968.*
(Also reported in 158 N. W. 2d 362.)

For the appellant there was a brief by *Schwemer & Schwemer* of Milwaukee, and oral argument by *Evan C. Schwemer*.

For the respondent there was a brief by *John J. Fleming*, Milwaukee city attorney, and *John F. Kitzke* and *Thomas E. Hayes*, assistant city attorneys, and oral argument by *Mr. Hayes*.

HEFFERNAN, J.   The appellant's principal contention is one that is raised for the first time on appeal.[1]  He claims that, because the Health Department for nine years permitted Westgate to operate second-class dwelling units without kitchen sinks, this constituted a variance in fact which could not be revoked without just cause.

It is clear that from 1958 through 1967 the 17 rooms were classed as second-class dwelling units.  A dwelling

---

[1] The respondent is correct in pointing out that the "variance in fact" defense was not presented to the trial court. It is correct, as respondent contends, that matters not raised at trial cannot ordinarily be raised for the first time on appeal. *State ex rel. Grant School Dist. v. School Board* (1958), 4 Wis. 2d 499, 91 N. W. 2d 219. This court, however, in its discretion can review errors in a certiorari proceeding not raised at trial. *Cappon v. O'Day* (1917), 165 Wis. 486, 162 N. W. 655; *State ex rel. Kenosha Office Bldg. Co. v. Herrmann* (1944), 245 Wis. 253, 14 N. W. 2d 157, 14 N. W. 2d 910. Since the "variance in fact" issue is another shade of the doctrine of estoppel which was raised and rejected by the trial court, the merits of Westgate's contention are herein considered.

unit is defined by the ordinance as a habitable room or group of rooms with facilities which are used for living, sleeping, cooking, and eating of meals. A second-class dwelling unit must contain an approved type kitchen sink.

The appellant argues that, because the building has been licensed for hotel and dwelling-unit purposes for the last nine years, certain vested rights have been created which cannot now be terminated. Westgate relies on the following passage from 9 McQuillin, *Municipal Corporations* (3d ed.), p. 196, sec. 26.81a:

"Although a lawfully issued license or permit may not strictly be property, it has some of the aspects of property and it is entitled to protection against arbitrary revocation. Viewed somewhat differently, but to similar effect, while a license or permit may be considered a privilege as distinguished from a right, it may be considered equivalent to a contract right to the extent that it cannot be abrogated at any time without sufficient cause."

While we have no quarrel with the McQuillin statement in the context in which it is used, it assumes the granting of a valid permit or a granting of a variance after the licensing board has made the considered choice of permitting a variance from the statutory requirements. The compilation of Milwaukee housing ordinances in the record includes sec. 75–3 (3), which permits the commissioner of health to grant a variance from the provisions of the code when a literal enforcement of the provisions will result in a practical difficulty or unnecessary hardship. A reading of the full ordinance makes it clear that the granting of a variance is a formal and deliberative matter, which requires the finding of hardship, on one hand, and the finding, on the other hand, that public health and welfare will be secured. The record herein is devoid of any evidence that a variance was granted. The most that can be said for the plaintiff's position is that he had been violating the law for a number of years and had got away with it.

The argument posed by the appellant in the trial court was that, because of the long-delayed enforcement of the ordinance and because it had been lulled into thinking that it was in full compliance, the city was estopped from enforcing the health regulations.

What the appellant now denominates as a variance in fact is but another name for estoppel, which it argued in the trial court, and which it now concedes is not applicable against a municipal corporation.

The most that the appellant has proved is that it should have been denied the license at a far earlier date. It, however, is axiomatic that a law-enforcing body, when faced with the practical difficulties of enforcing all of its regulations at once, is not thereby barred from future enforcement of the law, especially, as in this case, when there has been substantial notice given.

No variance was granted under sec. 75-3 (3) of the Milwaukee housing ordinance, and the failure of the city of Milwaukee to exact complete compliance in the past does not estop it in demanding compliance now.

The appellant also argues that the failure of the respondent to grant a variance imposes practical difficulties and unnecessary hardships, and constitutes an abuse of discretion. Contrary to the premise upon which the appellant's argument is based, the commissioner of health did, in fact, grant a variance. His order was dated January 12, 1967, and specifically permitted the units in question to retain the classification as second-class dwelling units until July 1, 1967. In view of the fact that the original order of the commissioner seeking compliance was dated June 28, 1966, it would appear that the appellant has been given an ample opportunity to comply.

The trial judge in his memorandum opinion pointed out that, at the time of his decision, the Westgate Hotel had been allowed to remain in a state of noncompliance for a period of one year and three months. While the record

does not show the present status, it is probable that the appellant continues to operate until the present time.

The review of this court in a matter brought to it by certiorari is limited to:

"(1) Whether the board kept within its jurisdiction, (2) whether it acted according to law, (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment, and (4) whether the evidence was such that it might reasonably make the order or determination in question." *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. 2d 243, 255, 111 N. W. 2d 198.

It is clear that the only arguable position that the appellant has is that the conduct of the commissioner was arbitrary and capricious. A review of the record makes it eminently clear that the conduct of the commissioner was most exemplary. As we pointed out above, six adjournments were given at the request of the petitioner. By these adjournments, an additional half year of noncompliance was gained, and the order itself allowed another six months to conform.

The trial judge typified the action of the commissioner as being:

". . . neither arbitrary nor unreasonably arrived at. He acted according to the provisions of the ordinance; accorded to petitioner an extraordinary measure of fair play . . . ."

As alluded to in the statement of facts, the record makes it clear that the management of the Westgate Hotel was not so much concerned with the out-of-pocket expense that might be incurred by the installation of the sinks, but was concerned about making such an investment in view of the uncertainty of the future of the hotel business in the city of Milwaukee. The facts support the statement of George Kupfer, superintendent of the Bureau of Environmental Sanitation, who stated:

"If the court rules in favor of the tax freeze system, two proposed hotels may be built in the Milwaukee area in the near future. Mr. McCabe alleges that in this event he would have to revert his operation to a second class dwelling or rooming house and, therefore, loss of the status of these rooms as second class dwelling units at this time would jeopardize his position to make this conversion in the future. On the other hand, if the tax freeze system is ruled out and the hotels are not built, Mr. McCabe feels that the Westgate Hotel will be further developed as a hotel, thus eliminating the need for the second class dwelling units. The decision by the Supreme Court is expected in January."

The case of *Gottlieb v. Milwaukee* (1967), 33 Wis. 2d 408, 147 N. W. 2d 633, was handed down by this court on January 10, 1967. At that time, according to the thinking of Westgate's management, the problem should have been resolved. It is thus clear that the appellant was given almost six months thereafter to comply with the order.

On a writ of certiorari we are confined to such evidence as appears of record. In looking to the principal complaint of the appellant as presented to the Health Department, that is, the uncertainty created by the question of the constitutionality of the tax-freeze law, it is apparent that the appellant was treated reasonably and with great deference to its problem. It is obvious that the issuance of the order was in no way an abuse of discretion.

Appellant also attacks the order of the commissioner because it requires the installation of "approved type kitchen sink[s]." Westgate contends that, since sec. 75–1 (1) provides "[a]pproved shall mean approved by or in accordance with regulations established by the commissioner of health," this standard is so vague and indefinite as to vest the commissioner with an unlimited discretion and is, therefore, unconstitutional.

It would appear that this argument is truly one of "throwing in everything including the kitchen sink."

The record indicates that between 1958 and 1967 kitchen sinks were installed in some of the second-class dwelling units of the Westgate Hotel. It is thus hard to imagine any reasonable basis upon which the appellant could now conclude that the term, "approved type kitchen sink," is vague and subject to conferring too much discretion upon the commissioner.

It is also clear that the ordinance itself contains sufficient standards to save it from vagueness. Sec. 75–1 (19) defines the term, "kitchen sink," as meaning a sink of a size and design adequate for the purpose of washing eating and drinking utensils, located in a kitchen, properly connected with a cold water line, and also properly connected with a hot water line after July 1, 1966.

The trial court also took judicial notice of:

". . . the State Plumbing Code promulgated by the State Board of Health and Chapter 40 of the Milwaukee City Code governing the installation of plumbing and drainage. Sec. 40–2 (b) describes 'fixture' as a 'receptacle intended to receive and discharge water, liquids, or water-carried wastes into a drainage system.' Sec. 40–7 (a) requires that it be installed with a trap. Sec. 40–9 (h) prescribes that sinks shall be made of vitreous china, enameled iron, stainless steel or other approved materials. . . . Sec. 40–9 (n) requires it to be equipped with a substantial and well-secured metallic strainer. Sec. 40–11 (c) prescribes trap, waste and vent sizes for a 'Kitchen Sink, Residential.' Sec. 40–18 prescribes the method of obtaining approval of new materials or fixtures. It is apparent, therefore, that by resort to the ordinances of the city of Milwaukee and the State Plumbing Code, the instant ordinance affords an adequate definition and standard with respect to a 'kitchen sink.' "

It would thus appear that the ordinance and the plumbing codes, which, of course, are binding upon any plumber as well as the city, are replete with definitions of kitchen sinks. These effectively limit the discretion of the commissioner and define what may be approved. There is no

reason to believe that the commissioner would give the ordinances an unconstitutional interpretation.

We conclude that "approved" as used in sec. 75-1 (1) vests no discretion in the commissioner other than that required to determine whether a kitchen sink conforms with validly enacted ordinances, rules, and regulations.

In *State ex rel. Wember v. Kingston* (1934), 214 Wis. 362, 253 N. W. 401, it was contended that the words of the statute, "approved by the Commissioner of Banking," conferred upon the commissioner unlimited discretionary authority to approve or disapprove of certain articles of incorporation. The court found that, under these circumstances, there was no unlawful delegation of discretion to the administrator in that his authority under the statute was merely to examine the articles to determine whether they complied with the law related to the organization of a mutual savings bank and that his duty in this respect was purely ministerial.

In the case of *Chicago v. Ben Alpert, Inc.* (1938), 368 Ill. 282, 13 N. E. 2d 987, the administrative officer in question was authorized to "approve" applications. It was contended that this was an arbitrary and illegal delegation of legislative power. The Illinois Supreme Court, however, pointed out, at page 288:

"The word 'approved,' within the contemplation of the ordinance, obviously means approved or passed in conformity with the applicable requirements of the municipal code. The presumption obtains that public officials will comply with rather than disregard the law."

We conclude that the cited cases are apposite here. Considering the housing regulations as they exist in the framework of city ordinances, it is apparent that the standards are encompassed therein, and unbridled discretion is not vested in the commissioner. We are satisfied that the statute contemplates no unconstitutional delegation of authority.

*By the Court.*—Order affirmed.