STATE EX REL. GENERAL MOTORS CORPORATION, AC ELEC-
TRONICS DIVISION, Appellant, v. CITY OF OAK CREEK
and others, Respondents.

*No. 209. Argued November 4, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 481.)

For the appellant there were briefs by *Foley & Lardner* of Milwaukee, attorneys, and *Ross L. Malone* and *Paul H. Zalecki* of counsel, both of Detroit, Michigan, and oral argument by *James R. Modrall* of Milwaukee.

For the respondents there was a brief by *Milton S. Bedusek* of Cudahy, Oak Creek city attorney, and by *George A. Schmus* of West Allis, special counsel, and oral argument by *Mr. Schmus*.

A brief amicus curiae was filed by *Robert W. Warren,* attorney general, and *Benjamin Southwick,* assistant attorney general, for the state of Wisconsin in support of respondents.

BEILFUSS, J. The major issues on this appeal are:

(1) Whether the tax imposed on appellant may be sustained under sec. 70.18 (1), Stats.

(2) Whether sec. 70.11 (8m), Stats., is invalid by reason of the legislature's failure to comply with constitutional and statutory mandates in its enactment.

(3) Whether sec. 70.11 (8m), Stats., is invalid because it discriminates against the United States government and those with whom it deals.

The respondent, city of Oak Creek, contends that the appellant can be taxed for the United States property in its possession under either the recently enacted sec. 70.11 (8m), Stats., or under sec. 70.18 (1), which has been in existence in its present form for many years.

Sec. 70.18, Stats., entitled "Personal property, to whom assessed," reads in part:

"(1) Personal property shall be assessed to the owner thereof, except that when it is in the charge or possession of some person other than the owner it may be assessed to the person so in charge or possession of the same. . . ."

This statute was discussed and applied in *American Motors Corp. v. Kenosha* (1957), 274 Wis. 315, 80 N. W. 2d 363, affirmed per curiam (1958), 356 U. S. 21, 78 Sup. Ct. 559, 2 L. Ed. 2d 578, rehearing denied (1958), 357 U. S. 912, 78 Sup. Ct. 1147, 2 L. Ed. 2d 1163, which held that in determining ownership for purposes of taxation under this section this court would apply the true or beneficial ownership test.

In *American Motors Corp., supra,* the corporation had entered into a contract with the United States for the manufacture and supply of aircraft engines and repair and replacement parts. The contract provided that title to all parts, materials, inventories, and work in process should vest in the United States upon making any partial payment. The city of Kenosha assessed the personal property tax on the aircraft engine inventory. This court recognized that legal title and ownership were two different things and said that the unrestricted right of the company under the contract to acquire and dispose of the property and the risk of loss were elements of ownership in *American Motors* inconsistent with the vesting of title in the government, and that the property was not owned by the federal government although legal title had been transferred. Therefore the tax against the corporation was held valid on the ground that it was the beneficial owner.

The same general principle for determining ownership was applied in *State v. Jelco* (1957), 1 Wis. 2d 630, 85 N. W. 2d 487, 86 N. W. 2d 428. There, the state brought a suit to recover motor vehicle registration fees allegedly owed on school buses. Sec. 85.01 (4) (g), Stats., provided that the "owner" was to pay the fee. The school districts had been given legal title to the buses by the defendant, but were required to transfer legal ownership back at the end of the school year. The buses carried signs stating that they were owned and operated

by the school districts. The school districts had a hold-harmless obligation to the defendant, carried liability insurance, and had possession and control of the buses. This court held the buses were owned by the school districts, and that the case was not one where bare legal title was vested in the school districts and all other incidents of ownership remained in the defendant.

The same principle was recently applied in *Mitchell Aero, Inc. v. Milwaukee* (1969), 42 Wis. 2d 656, 168 N. W. 2d 183. The plaintiff constructed two aircraft hangars at its own expense on land leased from the county. The lease provided that upon completion title to the hangars would immediately vest in the county. Aero paid no rent for the two hangars and was responsible at its own cost for the repair and upkeep of the hangars. Aero was also required to provide fire insurance on one hangar and could amortize the costs of construction over the term of the lease for both state and federal income tax purposes. This court found that under the lease arrangement some of the rights usually associated with ownership were in Aero, and others were in the county. The control kept by the county over the hangars was not indicative of true ownership but concerned the operation of the airport. This "hybrid arrangement" was found not to pass sufficient incidents of ownership with proper title to constitute the county the true owner of the hangars within the provisions of sec. 70.11 (2), Stats.

Appellant also cites *Rohr Corp. v. San Diego County* (1960), 362 U. S. 628, 80 Sup. Ct. 1050, 4 L. Ed. 2d 1002; Matter of *ACF Industries v. Board of Assessors* (1961), 13 App. Div. 2d 154, 214 N. Y. Supp. 2d 915; and *Hopkins University v. County Commissioners* (1946), 185 Md. 614, 45 Atl. 2d 747, in all of which the United States did not have legal title to the real estate sought to be taxed. However, the property in each was found

to be immune from local taxation on the principle that in determining whether property is owned by the United States so as to be immune from state and local taxation the appropriate test is the practical ownership of the property rather than the holding of naked legal title.

Applying the indicia of ownership previously used by this court, the appellant cannot be considered the beneficial owner of this property for purposes of taxation under sec. 70.18 (1), Stats.

Legal title to the property is in the United States and all items were either furnished by the government or purchased at its expense. Appellant may not use the property for nongovernmental purposes without first obtaining permission from the government, which may be withdrawn at any time. In addition, appellant must pay rental fees for the use of the property on any nongovernmental projects. The risk of loss for damage or destruction of any property remains on the government, with the exception of losses caused by the wilful misconduct or bad faith of certain key employees. Minor repairs are the responsibility of appellant, but it ultimately bills the government for any repairs actually made. Although the physical location of the property is in the company plant, general control and dominion remains in the government which has the right to inspect and remove any property at any time. Appellant is required to keep detailed records concerning all government property in its possession. The ultimate disposition of all property is determined by the government and it receives the proceeds from any property disposed of. The contracts may be terminated by the government at will. However, the appellant has the right of reimbursement against the government for any taxes which it pays on the property.

Aside from the profit realized under its contracts with the government, and the privilege, subject to strict gov-

ernment control, of renting the government property for use on nongovernmental projects, appellant's ownership interest in the property is minimal and considerably less than was required for beneficial ownership for purposes of taxation in the cases cited above.

The appellant AC Electronics contends it cannot be taxed as the party in possession under this statute. The determination of this question rests upon whether sec. 70.18 (1), Stats., is to be construed strictly on its face as authorizing only an *ad valorem* tax on the ownership of the personal property itself, or whether it is to be liberally construed by going behind the language and finding that it authorizes taxation of limited interests in the property, separate and distinct from the property itself, such as use of the property or a mere possessory interest.

If the section is construed as authorizing only an *ad valorem* tax on the property itself then appellant could not be taxed, since ownership, both title and beneficial ownership, is in the United States. Such a tax clearly could not have been levied on the United States directly, *M'Culloch v. Maryland* (1819), 17 U. S. (4 Wheat.) 316, 415, 4 L. Ed. 579, nor could it have been levied on the property while it was in the hands of a private bailee. *United States v. Allegheny County* (1944), 322 U. S. 174, 64 Sup. Ct. 908, 88 L. Ed. 1209. However, in the *Allegheny Case* the United States Supreme Court reserved the question of whether the bailee could be taxed for exercising the privilege of using government property.

The question of local taxation of federally-titled property beneficially used by a private party came before the United States Supreme Court in 1958 in *United States v. Detroit* (1958), 355 U. S. 466, 78 Sup. Ct. 474, 2 L. Ed. 2d 424, referred to as the *Borg-Warner Case; United States v. Muskegon Township* (1958), 355 U. S. 484, 78 Sup.

Ct. 483, 2 L. Ed. 2d 436, referred to as the *Continental Case;* and *Detroit v. Murray Corp.* (1958), 355 U. S. 489, 495, 78 Sup. Ct. 458, 486, 2 L. Ed. 2d 441, 460.

In 1953, Michigan enacted a statute providing that when tax exempt real property is used by a private person in a business conducted for profit the private person is subject to taxation to the same extent as if he were the owner of the property. It excluded the possession of three classes of tax exempt property: (1) Property where the use is by way of a concession in or relative to the use of a public airport, park, market, fairground, or similar property which is available to the general public; (2) federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed; and (3) property of any state-supported educational institutions. Any taxes due under the statute were the personal obligation of the private lessee or user. The owner of the property was not liable for payment, nor was the property itself subject to any lien for unpaid taxes. Mich. Stats. Annot., sec. 7.7 (5) and (6) (Supp. 1957).

Taxes were levied under this statute against *Borg-Warner* and *Continental,* both of which were Department of Defense contractors, occupying defense plants—*Borg-Warner* under a lease for a term of years, and *Continental* under a permit which could be terminated at will.

The United States challenged the constitutionality of the statute, arguing that it imposed a tax on property belonging to the United States. The United States Supreme Court upheld the imposition of the tax, concluding that it was not levied against the property itself. In the *Borg-Warner Case,* at page 470, the court said:

". . . A tax for the beneficial use of property, as distinguished from a tax on the property itself, has long been a commonplace in this country. . . . In measur-

ing such a use tax it seems neither irregular nor extravagant to resort to the value of the property used; indeed no more so than measuring a sales tax by the value of the property sold. . . . Other things being the same, it seems obvious enough that use of exempt property is worth as much as use of comparable taxed property during the same interval. In our judgment it was not an impermissible subterfuge but a permissible exercise of its taxing power for Michigan to compute its tax by the value of the property used."

The statute upheld in the *Borg-Warner* and *Continental Cases* clearly purported to be a tax on possession and use of real property. However, in the *Murray Case,* a tax was imposed on inventory and work in process in the possession of Murray, the subcontractor of an air force prime contractor. Murray's subcontract provided that if it had received a progress payment, title to all inventory and materials, upon acquisition by Murray, would vest directly in the government. The tax had been imposed under a typical *ad valorem* personal property tax statute which provided in part:

"The owners or persons in possession of any personal property shall pay all taxes assessed thereon. . . . In case any person by agreement or otherwise ought to pay such tax, or any part thereof, the person in possession who shall pay the same may recover the amount from the person who ought to have paid the same. . . . [6 Mich. Stats. Annot. (1950), secs. 7.1, 7.10, 7.81.] Title VI, c. II, sec. 1, and Title VI, c. IV, secs. 1, 7, 26, 27, of the charter of the city of Detroit."

In spite of the fact that the personal property tax section made no reference to a tax on use and possession, the United States Supreme Court still sustained the tax. The court noted its decision in the *Borg-Warner* and *Continental Cases* and stated that the principles expressed in those cases were controlling in *Murray*.[2] The court went on to state at pages 492–494:

---

[2] For a discussion of the *American Motors Case, supra,* and the three Michigan cases see 1959 Wis. L. Rev. 190.

"The taxes imposed on Murray were styled a personal property tax by the Michigan statutes and it relies upon this to support its contention that they were actually laid against government property. However in passing on the constitutionality of a state tax 'we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it.' . . . Consequently in determining whether these taxes violate the Government's constitutional immunity we must look through form and behind labels to substance. This is at least as true to uphold a state tax as to strike one down. . . . As applied—and of course that is the way they must be judged—the taxes involved here imposed a levy on a private party possessing government property which it was using or processing in the course of its own business. It is not disputed that Michigan law authorizes the taxation of the party in possession under such circumstances. . . .

". . .

"It is true that the particular Michigan taxing statutes involved here do not expressly state that the person in possession is taxed 'for the privilege of using or possessing' personal property, but to strike down a tax on the possessor because of such verbal omission would only prove a victory for empty formalisms. And empty formalisms are too shadowy a basis for invalidating state tax laws. . . . In the circumstances of this case the State could obviate such grounds for invalidity by merely adding a few words to its statutes. Yet their operation and practical effect would remain precisely the same.

"There is no claim that the challenged taxes discriminate against persons holding government property. To the contrary the tax is a general tax which applies and has been applied throughout the State. . . ."

Although it now had authority to sustain such a tax, the Michigan Supreme Court (all three of the cases discussed above arose in Michigan) was not persuaded that the construction placed on its personal property tax statute by the United States Supreme Court was correct, and it continued to strike down taxes imposed on possessory and use interests under that section in

the absence of specific statutory authority. *See: Continental Motors v. Muskegon Township* (1961), 365 Mich. 191, 112 N. W. 2d 429; *General Motors Corp. v. Detroit* (1964), 372 Mich. 234, 126 N. W. 2d 108, certiorari denied, 377 U. S. 977, 84 Sup. Ct. 1883, 12 L. Ed. 2d 746; and *Burroughs Corp. v. Detroit* (1969), 18 Mich. App. 668, 171 N. W. 2d 678. In the *Continental Motors Case,* the court said at page 195:

". . . We are unable to adopt the supreme court's construction in *Murray* of our general property tax act as it then related to *personal* property because there was then no specific statutory authorization for imposition of a tax upon the right to use another's tax exempt *personal* property comparable to PA 1953, No. 189 [which taxed possessory interests in real property] and because our prior decisions tend to support a contrary construction. . . ."

The Michigan legislature ultimately did provide such specific statutory authorization with an amendment to its statutes, PA 1959, No. 266, which provides:

". . . personal property not otherwise taxed under this act which is in the possession of any person, firm or corporation using same in connection with a business conducted for profit shall be deemed the property of such person for taxation and assessed to him accordingly."

Clearly, sec. 70.18 (1), Stats., is a part of the structure of assessment and collection of a personal property tax on the ownership of personal property, whether it be an absolute ownership, or a beneficial one as defined by this court.

Sec. 70.01, Stats., provides that, "Taxes shall be levied under this chapter, upon all general property in this state except as is exempted therefrom. . . ."

Sec. 70.02, Stats., defines general property as ". . . all the taxable real and personal property defined in

ss. 70.03 and 70.04 except that which is taxed under ss. 70.91 to 70.98 and chs. 76 and 77."

Sec. 70.04, Stats., defines the term "personal property" as ". . . all goods, wares, merchandise, chattels, and effects, of any nature or description, having any real or marketable value, and not included in the term 'real property,' . . ."

Sec. 70.11, Stats., enumerates the property exempted from taxation.

Sec. 70.18 (1), Stats., provides that, "Personal property shall be assessed to the owner thereof, except that when it is in the charge or possession of some person other than the owner it may be assessed to the person so in charge or possession of the same. . . ."

Sec. 70.19 (2), Stats., provides that when the assessment is made against some person in charge or possession other than the owner a person beneficially entitled thereto, ". . . He shall have a personal right of action against the owner or person beneficially entitled to such property for the amount of such taxes and shall have a lien therefor upon such property . . . ."

Sec. 70.20 (1), Stats., provides that, "When personal property shall be assessed to some person in charge or possession thereof, other than the owner, such owner as well as the person so in charge or possession shall be liable for the taxes levied pursuant to such assessment; and the liability of such owner may be enforced in a personal action as for a debt. . . ."

And sec. 70.20 (2), Stats., provides that, "The remedy of attachment may be allowed in such action . . . ."

Though authority may be found in the *Murray Case* for imposing a tax on the beneficial use of personal property under sec. 70.18 (1), Stats., to do so requires disregarding the related sections, and calling sec. 70.18 (1) something which it does not, on its face, purport to be, to wit, a use tax.

It should be noted that the *Murray* decision was reached on the same day as the *Borg-Warner* and *Continental* decisions which approved of the imposition of a tax upon the right to use real property. If the court had not allowed the tax to stand in *Murray* it would have left Michigan in the position of taxing users of exempt real property, but not exempt personal property. It was also easier for the court to supply the added intent to the personal property section since the Michigan legislature had created specific statutory authority for such a tax on real property. The situation is not similar in the instant case. Prior to the enactment of sec. 70.11 (8m), Stats., Wisconsin did not seek to tax the right to use such property, whether real or personal, and the decisions of this court and the actions of the legislature clearly indicate that there never was statutory authority to do so. If sec. 70.18 (1) was thought to have authorized a tax on the use of exempt property this court would not have been required to find beneficial "ownership" in *American Motors,* since the property in question there was clearly used by the company for pecuniary profit. However, there is no indication in that case or any other that this court ever thought that section authorized the taxation of such use in the absence of true "ownership." We therefore determine that sec. 70.18 (1) does not authorize the tax sought in this instance.

The specific statutory authority for local taxation of the use of United States government property for private pecuniary profit is now found in the recently [3] enacted sec. 70.11 (8m), Stats., which provides:

"Where property owned by the U. S. government or any of its instrumentalities is leased to, used by or in the charge or possession of a person and is used for pecuniary profit, an amount equivalent to the real and personal assessments shall be placed on the assessment role opposite the name of such person and the taxes

[3] Laws of 1967.

thereon shall become due and payable at the same time and in the same manner as other property taxes. If such taxes become delinquent, the municipality which has assessed and levied such taxes shall collect the same in an action against such person brought in the circuit court of the county or counties in which such real property is located. No lien shall be asserted or enforced against any such property."

Appellant's first argument against sustaining the tax under this section is that sec. 70.11 (8m), Stats., is void because it was invalidly enacted. Respondents contend that this issue is not before the court because appellant failed to plead the method of enactment, made no request for judicial notice, and made no record concerning the method of enactment before the board of review or the trial court. The state, as amicus curiae, contends that the only errors of law reviewable by certiorari are those committed by the board whose actions are being reviewed, and not errors of law of the legislature.

Initially, it has been clearly established that the journals of the legislature are proper subjects of judicial notice, both as an aid to interpretation of the statutes and for the purpose of determining whether or not a statute has been validly enacted. *Medlock v. Schmidt* (1965), 29 Wis. 2d 114, 138 N. W. 2d 248; *State v. P. Lorillard Co.* (1923), 181 Wis. 347, 193 N. W. 613. In *P. Lorillard Co.*, at page 370, it was stated:

"No authority need be cited to the familiar rule that the court may take judicial notice of the journals of the legislature to determine whether the requirements for the enactment of statutes have been complied with."

Further, the taking of judicial notice of public documents by circuit courts on certiorari has also been recognized in proper circumstances. *State ex rel. Boostrom v. Board of Review* (1969), 42 Wis. 2d 149, 166 N. W. 2d 184 (State Department of Taxation figures);

*Westgate Hotel, Inc. v. Krumbiegel* (1968), 39 Wis. 2d 108, 158 N. W. 2d 362 (State Plumbing Code).

Under the standards of review in the trial court and in this court in reviewing the action of an administrative board or agency on certiorari, the court is to determine:

"(1) Whether the board kept within its jurisdiction, (2) whether it acted according to law, (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment, and (4) whether the evidence was such that it might reasonably make the order or determination in question." *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. 2d 243, 255, 111 N. W. 2d 198.

The issue of the validity of the enactment of sec. 70.11 (8m), Stats., was not raised before the board of review, in the petition for certiorari, or in appellant's initial circuit court brief. It was first raised in appellant's supplemental circuit court brief. In its memorandum decision the trial court stated:

". . . 'the relator who selects certiorari as his method of review and remedy, subjects himself to having his rights decided upon such statements of facts as the return may make, if so responsive.'

"The Court, therefore, is without power to consider the Company's arguments concerning the method and manner of passage and enactment of sec. 70.11 (8m) Wis. Stats., and concludes, therefore, that the section must be held to be validly enacted."

The matter here in question was not a factual determination which could have been made by the board of review. Rather, it concerns the validity of a statute, clearly a question of law, and subject to determination by a judicial body. In *Milwaukee County v. Isenring* (1901), 109 Wis. 9, 26, 85 N. W. 131, this court said:

"It must be understood that when the existence or the contents of a statute are called in question, no issue of fact is presented for a trial upon the evidence, but

the court, whether one of original or appellate jurisdiction, must necessarily decide the question the same as it decides any other question of law. . . ."

The board's determination was attacked in the petition as being beyond its jurisdiction and contrary to law, though not on the basis of the enactment of the statute. Once its jurisdiction was in question all relevant consideration concerning that jurisdiction should be deemed as before the court, if the necessary factual matters are in the record or are such that the court can take judicial notice of them.

Here, if the section was not properly enacted no effective law resulted and the matter stood as if the section had not been passed. *State ex rel. Martin v. Zimmerman* (1939), 233 Wis. 16, 288 N. W. 454. Stated another way, the board would have had no jurisdiction to act as it did. The determination of whether the board had jurisdiction would of necessity be controlled by something which could not have been included in the record, the journals of the legislature. They were not factual matters, subject to dispute, but public documents properly the subject of judicial notice.

However, even if this inquiry into the jurisdiction of the board is deemed to have been waived in the trial court and raised for the first time on appeal, it would appear that the court should still consider it because of its fundamental nature and importance. The usual reasons for not considering such questions are not present here in that there is no problem of an incomplete record, and the opposing party has had the opportunity to brief the question and present its arguments. This court has said that whether it should review an issue raised here for the first time depends upon the facts and circumstances disclosed by the particular record. The question is one of administration, not of power. *See Cappon v. O'Day* (1917), 165 Wis. 486, 162 N. W. 655; *State ex rel. Postel v. Marcus* (1915), 160 Wis.

354, 152 N. W. 419. Since the issue raised concerns the jurisdiction of the board of review, a subject properly reviewable on certiorari, it should be considered.

Appellant lists four aspects of the legislative history of this section which it alleges were inadequate:

(1) The yeas and nays were not taken or duly entered on the journal as required by art. VIII, sec. 8, Wisconsin Constitution;

(2) The three-fifths quorum requirement of art. VIII, sec. 8, Wisconsin Constitution, was not complied with;

(3) The bill was not approved by the governor within six days as required by art. V, sec. 10, Wisconsin Constitution; and

(4) The bill was not referred to the Joint Committee on Finance as required by sec. 13.10, Stats.

Article VIII, sec. 8 of the Wisconsin Constitution provides:

"On the passage in either house of the legislature of any law which imposes, continues or renews a tax, or creates a debt or charge, or makes, continues or renews an appropriation of public or trust money, or releases, discharges or commutes a claim or demand of the state, the question shall be taken by yeas and nays, which shall be duly entered on the journal; and three-fifths of all the members elected to such house shall in all such cases be required to constitute a quorum therein."

Respondents contend that art. VIII, sec. 8 of the Wisconsin constitution is inapplicable in that this section neither "imposes, continues or renews a tax" since beneficial ownership of such property was already taxable under sec. 70.18 (1), Stats., and *American Motors, supra.* We believe this conclusion is erroneous because sec. 70.11 (8m) was enacted to tax an interest not previously taxable under sec. 70.18 (1). Prior to sec. 70.11 (8m), a personal property tax could not be imposed on a person in possession of United States property unless that person was found to be the true or beneficial owner as defined by the court. However, under sec. 70.11 (8m),

where property is "leased to, used by or in the charge or possession of a person and is used for pecuniary profit," a tax may be imposed on that use regardless of whether or not that party holds enough indicia of ownership to constitute him the beneficial owner under *American Motors.*

In *B. F. Sturtevant Co. v. Industrial Comm.* (1925), 186 Wis. 10, 202 N. W. 324, this court discussed art. VIII, sec. 8 of the Wisconsin Constitution, and stated at page 17:

". . . We think the better rule, however, is that the section should be considered mandatory, and we so hold. *State v. Wendler,* 94 Wis. 369, 377, 68 N. W. 759; *State ex rel. Postel v. Marcus,* 160 Wis. 354, 366 et seq., . . ."

And in *Integration of Bar Case* (1943), 244 Wis. 8, 11 N. W. 2d 604, 12 N. W. 2d 699, the court said at page 23:

"By the great weight of authority it is held that an enrolled bill will be declared void where the journals fail to show upon final passage thereof a yea and nay vote was taken which together with those voting for and against a measure was spread upon the journals if the constitution so requires. It has been so held in Alabama, Arkansas, Colorado, Delaware, Florida, Idaho, Missouri, Montana, Oregon, Virginia, Wyoming, and in the federal court. For citation of authorities see 40 L. R. A. (N. S.) p. 19, under heading 'Failure to record vote as constitution directs.' "

And further, at page 27:

"We hold in accordance with the weight of authority upon that question that where the constitution requires the entry in the journal of certain steps in the enactment of a bill that it must appear from the journal that those steps have been taken or the act was not validly enacted. . . ."

We conclude that sec. 70.11 (8m), Stats., is a statute that imposes a tax and that its enactment must comply with art. VIII, sec. 8 of the Wisconsin Constitution.

A review of the assembly journal for November 1, 1967, at page 1988, and the senate journal for December 14, 1967, at page 1982, does reveal that yeas and nays were neither taken nor entered in the journals in either house of the legislature.

The respondents argue that the cases cited above which hold that the language of the section is mandatory should be abandoned, citing 1 Sutherland, *Statutory Construction* (3d ed.) for authority. We are not so persuaded, and adhere to the rule that where a tax is enacted it is mandatory that the yeas and nays be recorded in the legislative journals. This defect alone is sufficient to render sec. 70.11 (8m), Stats., a nullity.

Article VIII, sec. 8 of the Wisconsin Constitution also provides that three fifths of all the members elected to each house shall be required to constitute a quorum. Respondents are correct that the journals show that such a quorum was present at other times during the days on which this bill passed both houses; however, because no roll call vote was taken appellant is correct that it cannot be definitely ascertained whether such a quorum was present when this bill passed. A possible inference would be that there was, but it cannot be proven by the journals. It might be noted that there is no requirement that the presence of a quorum be entered in the journal but this, in effect, would be done if the roll call provision was complied with.

This court has said:

". . . The object and purpose of art. VIII, sec. 8, of the constitution above cited seems very clear. In important legislation of the character there indicated it was deemed necessary that there should be a quorum present consisting of three fifths of all members of either house. The requirement that the question should be taken by yeas and nays and duly entered on the journal was deemed necessary both to furnish proof that the law was enacted by a majority and to fix responsibility on each member voting. . . ." *State ex rel. Cru-*

*cible Steel Casting Co. v. Wisconsin Tax Comm.* (1925), 185 Wis. 525, 534, 201 N. W. 764.

Appellant next argues that the bill was not approved by the governor within the time allowed by art. V, sec. 10 of the constitution. That section states:

". . . If any bill shall not be returned by the governor within six days (Sundays excepted) after it shall have been presented to him, the same shall be a law unless the legislature shall, by their adjournment, prevent its return, in which case it shall not be a law."

The legislature adjourned on December 16, 1967, and the bill was enrolled in final form on December 20, 1967. Although it does not appear in the journals, respondents point out that the record book of the assembly chief clerk indicates that the bill was presented to the governor on January 3, 1968, the same day he signed it.

The *Integration of the Bar Case, supra,* held that where the constitution requires entry in the journal of certain steps in the enactment of a bill such steps must appear in the journal for the act to be valid. Art. V, sec. 10 of the constitution does require journal entries if a bill is returned by the governor, but it does not require an entry to show when a bill is presented to him. Therefore notice might properly be taken of the chief clerk's record book to establish the date, and in this case it shows that the bill was presented and signed on the same day.

Finally, appellant argues that the section is invalid because the bill was never submitted to the joint committee on finance pursuant to sec. 13.10 (1), Stats., which provides:

"All bills introduced in either house of the legislature for the appropriation of money, providing for revenue or relating to taxation shall be referred to the joint committee on finance before being passed."

The only case we have found which discussed this section is *State v. P. Lorillard Co., supra.* In that case the bill in question had been referred to the committee by the senate after passage in the house. The argument was made that the section required referral by each house before the final vote was taken in that house. In rejecting this argument the court said at page 372:

". . . There is no constitutional requirement involved. The committee referred to in the statute is a joint committee composed of members of both houses. In the senate the bill was referred to that committee.

"It will be observed that sec. 13.06 does not state that the bill shall be referred to the finance committee by each house before final passage. The language is that it 'shall be referred to the committee on finance before being passed or allowed.'

"It may be that it would be desirable, as argued by defendants' counsel, that each house should refer bills for the appropriation of money to the finance committee before it takes final action, but as we construe the statute it does not make any such requirement. This is a question of policy for legislative, not judicial, determination."

Thus the court was able to avoid the question presented here since that bill had been submitted by at least one house.

This court has stated that the word "shall" is to be construed to mean "may" where such construction is warranted by other circumstances. *State ex rel. Werlein v. Elamore* (1967), 33 Wis. 2d 288, 147 N. W. 2d 252. There the court said at page 293:

"In determining whether a statutory provision is mandatory or directory in character, we have previously said that a number of factors must be examined. These include the objectives sought to be accomplished by the statute, its history, the consequences which would follow from the alternative interpretations, and whether a penalty is imposed for its violation. *Marathon County v.*

*Eau Claire County* (1958), 3 Wis. (2d) 662, 666, 89 N. W. (2d) 271; *Worachek v. Stephenson Town School Dist.* (1955), 270 Wis. 116, 70 N. W. (2d) 657. We have also stated that directory statutes are those having requirements 'which are not of the substance of things provided for.' *Manninen v. Liss* (1953), 265 Wis. 355, 357, 61 N. W. (2d) 336.

"In 2 Sutherland, Statutory Construction (3d ed.), p. 216, sec. 2802, the author observes that provisions are normally considered directory 'which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey no prejudice will occur to those whose rights are protected by the statute.' The text further (p. 217, sec. 2804) states that a provision is interpreted as directory where the 'manner of performing the action directed by the statute is not essential to the purpose of the statute.' "

Applying these standards to sec. 13.10, Stats., leads to the conclusion that it is mandatory. It cannot be said that it simply assures the orderly and prompt conduct of business since such a requirement slows down and in a sense complicates the legislative process. The taxing power has long been considered an extremely important one and undoubtedly the purpose of the section is to require an additional measure of consideration and deliberation on attempts to exercise that power. Certainly improper taxation will result in prejudice to those taxed. Mandatory compliance with its provisions is a way to achieve its essential purpose.

The appellant has asserted several other arguments why sec. 70.11 (8m), Stats., should be declared invalid. Because we have determined that the section was not constitutionally enacted and is therefore a nullity we will only briefly comment upon two of these issues inasmuch as they may apply to subsequent actions by the legislature concerning this problem of taxing exempt property used for making a profit. In essence these arguments are:

(1) It is a direct *ad valorem* tax on United States property.

(2) It unconstitutionally discriminates against the United States and those with whom it deals.

The argument that sec. 70.11 (8m), Stats., imposes a direct *ad valorem* tax on the ownership of personal property is imposed by secs. 70.01 and 70.18 (1). By its very language sec. 70.11 (8m) imposes a use tax "[w]here property owned by the U. S. government or any of its instrumentalities is leased to, used by or in the charge or possession of a person and is used for pecuniary profit, . . ." It seems impossible to construe this as imposing a tax on anything but the usage. When the language of the section itself clearly establishes the intent and object of the statute such meaning should not be defeated by resorting to the title of the chapter or the particular section in an attempt to call the language something that it is not.

Such a use tax has clearly been approved by the United States Supreme Court, as has the fact that it may be determined by referring to the value of the property. The fact that it is determined by that standard does not make it a tax on the property itself. *United States v. Detroit, supra; United States v. Muskegon Township, supra,* and *Detroit v. Murray Corp., supra.*

Appellant's second argument, that sec. 70.11 (8m), Stats., is discriminatory does have considerable merit. In *United States v. Detroit, supra,* the supreme court stated at page 473:

"It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals. *Cf. M'Culloch v. Maryland,* 4 Wheat. 316. But here the tax applies to every private party who uses exempt property in Michigan in connection with a business conducted for private gain. Under Michigan law this means persons who use property owned by the Fed-

eral Government, the State, its political subdivisions, churches, charitable organizations and a great host of other entities. The class defined is not an arbitrary or invidiously discriminatory one. . . ."

And further, at page 474:

". . . Nor is there any showing that the tax is in fact administered to discriminate against those using federal property. To the contrary undisputed evidence introduced by appellees demonstrates that lessees of other exempt property have also been taxed."

In *Phillips Co. v. Dumas School Dist.* (1960), 361 U. S. 376, 80 Sup. Ct. 474, 4 L. Ed. 2d 384, the state of Texas imposed a tax upon a lessee of real property owned by the United States, measured by the full value of that property, while businesses with similar leases using exempt property owned by the state and its political subdivisions were not taxed on their leaseholds at all. The supreme court stated that it is necessary to determine how other taxpayers similarly situated are treated and that this requires an examination of the whole tax structure of the state. The court stated at page 385:

"It is true that perfection is by no means required under the equal protection test of permissible classification. But we have made it clear, in the equal protection cases, that our decisions in that field are not necessarily controlling where problems of intergovernmental tax immunity are involved. In *Allied Stores v. Bowers, supra,* for example, we noted that the State was 'dealing with [its] proper domestic concerns, and not trenching upon the prerogatives of the National Government.' 358 U. S. at 526. When such is the case, the State's power to classify is, indeed, extremely broad, and its discretion is limited only by constitutional rights and by the doctrine that a classification may not be palpably arbitrary. Id., at 526–528. But where taxation of the private use of the Government's property is concerned, the Government's interests must be weighed in the balance. Accordingly, it does not seem too much to require that

the State treat those who deal with the Government as well as it treats those with whom it deals itself. Compare *Esso Standard Oil Co. v. Evans*, 345 U. S. 495, 500."

The court went on to conclude that there was no justification for what was clearly a discrimination against the government and its lessees.

The court later held the *Dumas Case, supra*, controlling in *Moses Lake Homes v. Grant County* (1961), 365 U. S. 744, 81 Sup. Ct. 870, 6 L. Ed. 2d 66. There a county in the state of Washington assessed taxes against leasehold estates of lessees from the federal government on the basis of the full value of the buildings and improvements thereon, although other leaseholds were assessed at fair market value, excluding the value of the improvements. It reiterated that a state may not discriminate in tax matters against the federal government or its lessees, and found that this was the effect of the Washington statutes.

Sec. 70.11 (8m), Stats., by its very terms is limited to property belonging to the United States government. Therefore unless statutory authority can be found in other sections to impose a similar use tax on property held by private persons for pecuniary profit and owned by the state, its political subdivisions, or other exempt owners, it appears that sec. 70.11 (8m) as now written is unconstitutionally discriminatory.

The trial court solved this problem by finding that a use tax was imposed on all such persons by sec. 70.18 (1), Stats., and respondents and the state maintain that position here. They further support this argument by citing *Mitchell Aero, Inc. v. Milwaukee, supra*, for the proposition that beneficial uses may be taxed. As discussed earlier, sec. 70.18 (1) does not impose a use tax, and even if it did it relates only to personal property and therefore would allow discrimination against federally titled real estate under sec. 70.11 (8m). It is also

submitted that their interpretation of the *Mitchell Aero* decision is erroneous. In that case this court relied on the same general test that it did in *American Motors, supra,* and sustained the tax because *Mitchell Aero* was found to be the true beneficial "owner" of the hangars even though legal title was in the county. That case is not authority for the proposition that a mere beneficial "user" of any exempt property may be taxed.

In view of the fact that there is no statutory authority permitting taxation of the usage of state, local, or otherwise exempt property, it appears that sec. 70.11 (8m), Stats., is highly discriminatory and would have to be declared invalid for this reason alone.

In summary, we hold:

(1) Sec. 70.18 (1), Stats., imposes an *ad valorem* personal property tax on the ownership of property, and only by disregarding the previous decisions of this court and the legislative intent can it be construed to impose a use tax in the absence of beneficial "ownership" as defined in *American Motors Corp. v. Kenosha, supra.* Under the facts present here appellant does not hold such indicia of ownership and cannot be taxed under this section.

(2) Sec. 70.11 (8m), Stats., does create a use tax which did not previously exist in the statutes, and by reason of the legislature's failure to comply with the constitutional and statutory mandates for the enactment of a statute relating to taxation we must declare the statute to be a nullity.

*By the Court.*—Judgment reversed with directions to enter a judgment setting aside the tax for the year 1968 upon the property of the United States government in possession of the appellant.